STATE EX REL. EDWARD CANFIELD, RELATOR, v. HON. E. E. PORTERFIELD, JUDGE, RESPONDENT.*

Kansas City Court of Appeals. February 14, 1927.

554

*Corpus Juris-Cyc. References: Bastards, 7CJ, section 31, p. 955, n. 95, 99; section 33, p. 956, n. 6, 8; section 41, p. 959, n. 51, 55; Parent and Child, 46CJ, section 1, p. 1220, n. 3; section 34, p. 1258, n. 98.

*Miller, Winger & Reeder* and *David L. Sheffrey* for relator.

*Scarritt, Jones & North* for respondent.

BLAND, J.—This is an original proceeding in prohibition seeking to prohibit the Hon. Edward E. Porterfield, Judge of the juvenile court of Jackson county, Missouri, from proceeding under section 2611, Revised Statutes 1919, against the relator in the cause of State of Missouri v. Glen Canfield, therein pending, by decreeing that the relator support or contribute to the support of his child, the said Glen Canfield, who was born out of lawful wedlock.

The undisputed facts show that Glen Canfield was born on February 14, 1924; that the child's mother and relator, the father, have not since intermarried and that relator has never taken said child into his home to live with him nor had the custody of the child nor contributed to his support and, so far as the record shows, has done nothing to recognize the child as his own. However, the mother of the child brought a proceeding in the circuit court of Jackson county, Missouri, under section 311a (see Laws of 1921, p. 118) seeking a decree establishing the paternity of the child and that court, on January 25, 1926, decrees that the child was begotten out of lawful

wedlock and that relator and plaintiff therein were his father and mother. Thereafter, on April. 1, 1926, a petition was filed in the juvenile court, over which respondent presides, charging that the child was destitute and abandoned by his father; that he was dependent upon the public for support; that he was suffering from the cruelty and depravity of his father and that his father would not support him. The relator was duly summoned and appeared in the cause. The court found that the circuit court had decreed that relator was the father of the child and that the petitioner in the circuit court proceeding was the mother; that the mother and relator had not since intermarried; that relator had never taken and did not have the custody of the child nor had he contributed in any way to his support and that the child was dependent on the public for support. It was ordered that the child be adjudged a neglected child within the meaning of section 2591, Revised Statutes 1919, and that he be made a ward of the court. The cause was continued until June 7, 1926, for further hearing.

On the last-named day the cause again came on for hearing for the purpose of determining whether or not relator was able to support or contribute to the support of the child but the relator filed a plea to the jurisdiction of the court on the ground, among others, that he was not the parent of the child and not liable to contribute to its support within the meaning of Article 6 of Chapter 21, Revised Statutes 1919, being the juvenile court law. This plea was overruled and the cause was then continued until June 21, 1926. In the meantime, relator applied to this court for a writ of prohibition against the respondent and a temporary writ was issued on June 28, 1926. The matter now comes up before us on the question as to whether the temporary writ of prohibition should be made permanent.

It is substantially conceded by the parties that the sole question before us is whether the juvenile court of Jackson county, Missouri, under the provisions of the juvenile court act, mentioned, supra, and, particularly, section 2611 thereof, is empowered to require relator to support or contribute to the support of the child, Glen Canfield. In determining this point it is proper to give the history of the *status* of illegitimate children and to show the statutory modification that has been made in this state relative to that *status*.

At English common law a bastard or illegitimate child was considered the child of no one. It was not able to inherit property from either of its parents or anyone else and was not entitled to the support of its father and it is very questionable if even its mother was required to support it. The sin of its parents was visited, without mercy, upon its innocent head. It was a social outcast and was barely given the *status* of a member of the human family. [See 1 Schouler's Marriage, Divorce, Separation and Domestic Relations (6 Ed.), pp. 736, 747; 7 C. J., pp. 955, 956, 959.] However, under the common

law of Missouri the mother of an illegitimate child is under the primary duty to support it although the putative father is not. [Easley v. Gordon, 51 Mo. App. 637; Sponable v. Owens, 92 Mo. App. 174, 178; see, also, 1 Schouler's Marriage, Divorce, etc. (6 Ed.), p. 743; 7 C. J. 955.] However, the mother was given the custody of such a child by statute. [See section 371, R. S. 1919.] At an early day an illegitimate child was given the right to inherit from its mother and in 1915 an act was passed providing that if a man, having by a woman a child or children, should afterward intermarry with her and recognize such child or children as his own, they should thereby be legitimated "and capable of inheriting." [Gates v. Seibert, 157 Mo. 254, 277, 278, 279.] The Act of 1815 with the exception of the words quoted, is found in section 312 of the Revision of 1919. In 1822 an act was passed providing that the issue of all marriages decreed null in law or dissolved by divorce, should be legitimate. [See Gates v. Seibert, supra, l. c. 277.] This last act is the same as section 313, Revised Statutes 1919. Later an act was passed concerning the legitimating of children born of slave parents. [See section 314, R. S. 1919.] Some other acts relating to the *status* of illegitimate children were passed by the legislature in 1921, which will hereinafter be referred to. In some States what are called "Bastardy Acts" have been passed under which the putative father of an illegitimate child may be arrested and required to give security for the support of such child, but no such law has ever been enacted in this state.

The juvenile court act of Jackson county was passed in 1911 (see Laws of 1911, p. 177) including section 2611 under which respondent was attempting to proceed at the time he was prohibited by us. This section provides as follows:—

"In any case in which the juvenile court shall find a child neglected or delinquent, it may in the same or a subsequent proceeding, upon the parents of said child, or either of them, being duly summoned, or voluntarily appearing, proceed to inquire into the ability of said parent or parents to support the child, or to contribute to its support, and if the court shall find that such parent or parents are able to support the child, or contribute thereto, the court may enter an order or decree requiring said parent or parents to support said child or contribute thereto, and may enforce the same by execution; otherwise the necessary support of the child shall, until the court shall commit the child to a person or institution willing to receive it without charge, be paid out of the funds of the county, only, however, upon the approval of the judge of the juvenile court."

Respondent insists that he has jurisdiction under the provisions of this section to proceed against relator in the manner we have described. In construing statutes, the rule is that illegitimate children are not especially favored and will not be brought under a statute except where it purports to cover such children, but when the

statute bestows upon them a given status it is to be liberally construed so that such child may be given the advantages of existing remedies. [Wasmund v. Wasmund, 90 Wash. 274, 276; Bell v. Terry & Trench Co., 163 N. Y. Supp. 733; Breidenstein v. Bertram, 198 Mo. 328, 344, 348; Haddon v. Crawford, 97 N. E. 811; 7 C. J. 960; 1 Schouler's Marriage, Divorce, etc., supra (6 Ed.), pp. 737, 742.] A statute referring to a "child" or "children" or "parent" or "parents" is construed as referring to legitimate children and not to illegitimate children or bastards. [Gates v. Seibert supra, 1. c. 272; 1 Schouler's Marriage, Divorce, etc. (6 Ed.), p. 743; 7 C. J. 957, 959; 29 Cyc. 1583; Bell v. Terry & Trench Co., supra; State v. Miller, 52 Atl. 262 (Del.); People v. Fitzgerald, 152 N. Y. Supp. 641; Creisar v. State, 97 Ohio State 16; Moss v. United States, 29 App. Cases D. C. 188.] In the last case the question of the obligation of the putative father of a child born out of wedlock to support the child under a juvenile court act, was involved. The court said, 1. c. 194—

" 'We are convinced that the terms "parent or guardian," "father or mother," "father and mother," so often occurring (in the juvenile court act) cannot be construed to relate to a man charged with being the father of a bastard child; but mean lawful parents; and "that any person" means the lawful parent or guardian of such child." '

And it was held that the juvenile court had no right to compel the putative father of an illegitimate child to maintain it.

Section 2611, Revised Statutes 1919, refers to "parent or parents" and the power of the juvenile court to require such parent or parents to support the child or contribute thereto, but it does not say anything about bastards or illegitimate children and under the authorities, supra, we must hold that it does not cover such children. While the juvenile court act is to be liberally construed (see State v. Trimble, 269 S. W. 617), this rule of construction refers to the things that the statute purports to cover. The statute does not purport to impose any additional duties upon a parent, or obligations not already existing.

However, we understand that it is contended by the relator that under section 311, Revised Statutes 1919, as amended (see Laws of 1921, p. 118), and section 311a (see Laws of 1921, p. 118) and section 1813, Revised Statutes 1919, as amended (see Laws of 1921, p. 202), and section 1814 Revised Statutes 1919, and section 1814a (see Laws of 1921, p. 202) and sections 3273 and 3274, Revised Statutes 1919, as amended (see Laws of 1921, p. 281) the father of a child born out of wedlock has, in the main, the essential duties and liabilities that exist between a father and child born in wedlock and therefore that a child born out of wedlock should be treated in the administration of the juvenile court act the same as a lawful child.

In order to understand the purport of these statutes, it is necessary for us to set them out. At this time we quote section 311 as amended, 311a and 312 as amended (Laws of 1921, p. 118), which read as follows:—

Sec. 311. "A child heretofore born out of wedlock shall hereafter be capable of inheriting and transmitting inheritance from its mother, and such mother may inherit from such child in like manner as if it had been born in lawful wedlock. A child hereafter born out of wedlock shall be capable of inheriting and transmitting inheritance from both of its parents, and its parents and other blood relatives shall be capable of inheriting and transmitting inheritance from such child in like manner as if it had been born in lawful wedlock; Provided, however, that the provisions of this section shall not apply except in cases where the paternity of such child or children shall have been established by an action at law begun during the lifetime of the alleged father of such child."

Sec. 311a. "Whenever any child shall have been born out of lawful wedlock and the father and mother of such child shall not thereafter intermarry, then the mother of such child or any person of kin within the second degree of consanguinity shall be authorized to institute a suit in the circuit court having competent jurisdiction, the object and purposes of which shall be the obtaining of a decree establishing the paternity of said child; the practice and proceeding relative thereto shall be the same as in ordinary civil cases; providing, however, that no suit shall be instituted for the establishment of such paternity wherein the child and the alleged father do not belong to the same race."

Sec. 312. "If a man having a child by a woman, shall hereafter marry such woman, such child shall be deemed the lawful child of both father and mother as from the time of its birth. And if a man shall marry a woman having, at the time, a child or children born out of wedlock and shall take such child or children into his home and shall hold them out as his own, such act shall be deemed conclusive proof that such man is the father of said child or children."

Section 311, Revised Statutes 1919, before its amendment in 1921, read as follows:

"Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, and such mother may inherit from her bastard child or children, in like manner as if they had been lawfully begotten of her."

We have already described section 312, Revised Statute 1919, as it was before amendment.

It is contended that under the provision of section 311, Revised Statutes 1919, as amended, the illegitimate child and the father "now

inherit and transmit inheritance from each other in like manner as if the child had been born in lawful wedlock;'' that said section confers an equal right with the mother "of inheritance on the part of the father and thus the child born out of wedlock is given complete inheritable blood as regards both father and mother.'' This may be true, but the right to inherit is not determinative as to the question of the duty to support. [See State v. Byron, 104 Atl. 401 (N. H.).] In the case of Marshall v. Wabash Rd. Co., 120 Mo. 275, cited by respondent, the right of the mother of an illegitimate child as its "parent" to recover for its negligent killing and death, under the death statute, was upheld but not on the sole ground that such a mother may inherit from her illegitimate child, but on the ground that she was its natural guardian (section 371, R. S. 1919) and may inherit from it and was entitled to its custody and services and was required to support it. In other words, she occupied substantially the same status as a legitimate parent.

Our attention is also called to section 311a. This section does not make a child born out of lawful wedlock a legitimate child. Nor does respondent contend as much, but states "without contending that the decree fully legitimatizes Glen Canfield as regards his father, we submit that it is enough that it proves and establishes the petitioner Edward Canfield to be the father and parent in fact of Glen Canfield.''

It was evidently the intention of the Legislature in amending section 311 to place the mother and putative father upon the same footing in the matter of inheriting and transmitting inheritance in reference to illegitimate children or children born out of lawful wedlock, which means substantially the same thing, providing that, at least as to the father, section 311a should be followed. It was under the provisions of section 311a that the paternity of the child, Glen Canfield, was established in the circuit court of Jackson county, which court decreed relator to be his father. We thing that this proceeding under section 311a cannot be construed as to provide for the establishing of the paternity of the child except for the purpose of inheriting or transmitting inheritance. It is apparently a subdivision of section 311. We fail to find anything in the policy of our laws attempting to provide a *general status* between that of an illegitimate and a legitimate or legitimated child. Section 312 provides for legitimating illegitimate children and it is the only statute on the subject, and when the circumstances mentioned in that section are present the child born out of lawful wedlock is held to be legitimated for every purpose and occupies the same *status* as a child born in lawful wedlock. It is a legitimate child. [Gates v. Seibert, supra, l. c. 272, 275, 277; Allison v. Bryan, 21 Okla. 557; Harness v. Harness, 98 N. E.

357 (Ind.).] Of course, if the Legislature intended that section 311a should legitimate a child born out of lawful wedlock, it would have said so as it provided in section 312 as amended. Section 312 as amended, does not use the word "legitimated" as was used in that section prior to its amendment, but instead uses the words "deemed the lawful child of both father and mother as from the time of its birth," which, of course, means the legitimating of the child. Neither section 311 nor 311a says anything about which parent shall have the care, custody or services of the child or upon whom the duty to support shall fall, and under the rule of statutory construction laid down, supra, we would not be justified in reading into these sections something that is not mentioned therein or which they do not purport to cover. The father of an illegitimate child was not entitled to its custody or earnings at common law and is not now chargeable with its support in the absence of statute or contract giving him the right to its custody or imposing upon him the duty of support. [State v. Byron, supra, l. c. 402.]

The Act of 1921 makes some changes in section 312, Revised Statutes 1919. Previously it was not enough that the father of the child should marry the mother in order to legitimate the child but in addition it was necessary for him to recognize such child to be his in order to bring about this result. The amendment of section 312 provides that a child born out of wedlock shall be legitimated upon the marriage of the father and mother without the father's recognizing the child to be his and provided further that if he recognized it as his child, his act should be deemed conclusive proof that such man is the father of such child. It was held in Drake v. Milton Hospital Association, 178 S. W. 462, which was decided prior to the amendment of section 312, that while said section as it then stood legitimated the bastard child, that even after the process mentioned in said section had been gone through with, the child did not occupy any better *status* than one born of lawful parents, and it was pointed out that the presumption that a child born in wedlock is legitimate is not an absolute one but is rebuttable. So that now by the amendment of section 312 a child born out of wedlock, if its parents afterwards marry and the father recognizes the child as his own. is in a better position than a child born of lawful parents, for the reason that now the taking and recognizing of a child by the father, if an illegitimate child, is deemed conclusive proof that the man so taking the child, is its father.

It will thus be seen that in 1921 the Legislature took an advanced step in giving relief to children born out of wedlock. It dropped entirely the offensive word "bastard" and has substituted in lieu thereof "child born out of wedlock" and has referred to a "legitimated"

child, which suggests its prior illegitimacy, as one "deemed lawful." This is not only seen by the amendment of sections 311 and 312 but sections 3273 and 3274, Revised Statutes 1919, and the enactment of section 1814a, all of which latter sections will be hereinafter referred to. It was evidently the intention of the Legislature to avoid the use of terms that stigmatize the child and to use in lieu thereof words merely indicating its parentage so, as to distinguish its parents from lawful parents. However, it has not gone to the extent of legitimating such a child except where the circumstances mentioned in section 312 are present.

As before stated, there is no general intermediate *status* recognized in law between that of an illegitimate child and a lawful child, either originally lawful or made so by statute. Sections 311, and 311a, however, do place an illegitimate child, whose parentage has been established, in a distinctly better position in reference to inheriting and transmitting inheritance of property than those children whose parentage has not been established. However, there is nothing in section 311a that suggests that the putative father, whose identity has been established under the provisions of that section, shall support the child but it appears in the statute, under the article covering descents and distribution, and, as before stated, it is a subdivision of section 311 and seems to have reference only to the matter of inheriting and transmitting inheritance. [See Gates v. Seibert, supra, l. c. 276, where the court distinguishes Lyon v. Lyon, 88 Me. 395; see, also, Murphy v. Portrum, 95 Tenn. 605, 609.] The requirement that the father shall support his illegitimate child is covered in section 1813 as amended, section 1814, Revised Statutes 1919, 1814a, being a new section enacted in 1921, and section 3274, Revised Statutes 1919, as amended, but these statutes are not general in their scope. Sections 1813, 1814 and 1814a as they read at present provide as follows (the amendments made in 1921 are inserted in italics and the words left out of the original statute by the amendments are in parentheses):

Sec. 1813. "The *father and mother* (husband and wife) living apart are entitled to an adjudication of the circuit court as to their powers, rights and duties in respect to the custody and control and of the services and earnings and of the management of the property of their unmarried minor children without any preference as between the said *father* (husband), and *mother* (wife), and neither the *father* (husband) nor the *mother* (wife) has any right paramount to that of the other in respect of the custody and control or of the services and earnings or of the management of the property of their said unmarried minor children, any provisions of law whatever, written or unwritten, to the contrary in any wise notwithstanding;

and pending such adjudication the *father or mother* (husband or wife) who actually has the custody and control of their said unmarried minor children shall have the sole right to the custody and control and to the services and earnings and to the management of the property of said unmarried minor children."

Section 1814, Revised Statutes 1919 (which was not amended)—
"In all proceedings for divorce or other proceedings in which shall be involved the right to the custody and control of minor children, or their services and earnings, or the management of their estates, the rights of the parents shall be equal, and neither parent as such shall have any right paramount to that of the other parent, but in each case the court shall decide only as to the best interests of the child itself may seem to require."

Section 1814a (new section enacted in 1921)—
"The terms of this act shall apply to children born out of wedlock and to children born in wedlock and the terms 'father and mother,' 'parent,' 'child,' shall apply without reference to whether a child was born in lawful wedlock."

While these sections occur in the statute covering divorce and alimony they cannot be read except as referring to any proceeding involving the right to the custody and control of minor children or their services and earnings. The changes in these sections made in 1921 were evidently for the principal purpose of broadening the law in reference to illegitimate children. In this connection it will be noted that sections 311 and 1813, as amended by the Laws of 1921, and sections 311a and 1814a were all approved on the same day. Section 1813 as amended, and sections 1814 and 1814a provide for the custody and control and the services and earnings and the management of the property of unmarried minor children where their parent, either lawful (and we might add those "deemed" lawful) or unlawful, are living apart. These sections do not unqualifiedly give the custody or the earnings of the child, whether lawful or unlawful, to its father but provide for a contest over its custody, etc. In sections 1813 and 1814, it is provided that the rights of the parents shall be equal in respect to the matters mentioned in these sections. Sections 1813 and 1814, taken with section 1814a, in effect, modify to a degree that part of section 371, Revised Statutes 1919, appearing under the title of "Guardian and Curators of Minors," which (section 371) provides that where the child has no lawful father, the mother, if living, shall be the natural guardian and curator of her children and have the custody and care of their person, education and estate, etc.

As the relator herein has never been awarded the custody and control of the child in question nor had the right to its services and

earnings he is not required and cannot be compelled to support his child under the provisions of section 1813, as amended, and sections 1814 and 1814a, although the rule might be different if those things were present, in view of the holding of the Supreme Court in the case of Marshall v. Wabash Rd. Co., supra. However, sections 1813, 1814 and 1814a have nothing to do with a father who refuses to take the custody, etc., of his child. Those sections contemplate a contest over the child and do not mention anything about a parent being required to take the custody, etc., of his child, no process is provided therein whereby a parent may be compelled to do so. We know of no law in this state requiring, or providing for a requirement, that the father of an illegitimate child assume its custody.

It is insisted by the relator that in view of the provisions of sections 3273 and 3274, as amended (Laws of 1921, p. 281), the father of a child born out of wedlock is compelled to support it whether it has been legitimated or not. These sections now read—

Sec. 3273: ''If any mother or father of any infant child under the age of sixteen years, whether such child was born in lawful wedlock or not, or any person who has adopted any such infant, or any other person having the care and control of any such infant, shall unlawfully and purposely assault, beat, wound or injure such infant, whereby its life shall be endangered or its person or health shall have been or shall be likely to be injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars or by both such fine and imprisonment.''

Sec. 3274: ''If any man, shall, without good cause abandon or desert his wife or shall fail, neglect or refuse to maintain and provide for such wife; or if any man or woman shall, without good cause, abandon or desert or shall, without good cause, fail, neglect or refuse to provide the necessary food, clothing or lodging for his or her child or children born in or out of wedlock, under the age of sixteen years, or if any other person having the legal care or custody of such minor child, shall without good cause, fail, refuse or neglect to provide the necessary food, clothing or lodging for such child, or if any man shall leave the State of Missouri and shall take up his abode in some other State, and shall leave his wife, child or children, in the State of Missouri, and shall, without just cause or excuse, fail, neglect or refuse to provide said wife, child or children, with proper food, clothing or shelter, then such person shall be deemed to have abandoned said wife, child or children within the State of Missouri he or she shall upon conviction be punished by imprisonment in the county jail not more than one year or by fine not exceed-

564

ing one thousand dollars ($1000) or by both such fine and imprisonment. No other evidence shall be required to prove that such man was married to such wife than would be necessary to prove such fact in a civil action."

Section 3273 Revised Statutes 1919 before it was amended in 1921 provided that "if any mother of any infant child under the age of sixteen years or if the father of any such infant child, born in or legitimatized by, lawful wedlock," etc. This language was changed by the amendment so as to provide that "if any mother or father of any infant under the age of sixteen years whether such child was born in lawful wedlock or not," etc. Section 3274, Revised Statutes 1919, originally read as follows:

"If any man shall, without good cause, abandon or desert his wife, or abandon his child or children under the age of fifteen years born in or legitimatized by lawful wedlock, and shall fail, neglect or refuse to maintain and provide for such wife, child or children, he shall, upon conviction, be punished by imprisonment in the county jail not more than one year, or by a fine of not less than fifty dollars nor more than one thousand dollars, or by both such fine and imprisonment. No other evidence shall be required to prove that such husband was married to such wife, or is the father of such child or children; than would be necessary to prove such fact or facts in a civil action."

Before amended, it was only the father, of an infant child "*born in or legitimatized by lawful wedlock*" that was covered by these sections whereas the amendment covers, among others, both the mother and father of the child "whether such child was born in lawful wedlock or not" as provided in section 3273, or "child or children born in or out of wedlock" as provided in section 3274. These two clauses used by the Legislature in 1921 mean the same. It was evidently the intention of the Legislature in amending these two sections to cover mistreatment and abandonment of, and failure to support, a child by the father or mother whether the child was born in lawful wedlock or out of wedlock, or if born out of wedlock, whether legitimated or not, because, although the Legislature in 1921 dropped the words "bastard" and "legitimated," from the legitimating section or section 312, Revised Statutes 1919, if it had intended to confine the operation of sections 3273 and 3274 to legitimate or legitimated children, as the sections did before they were amended, it would have said child born out of wedlock that had been deemed, made or constituted "the lawful child" of the "mother or father" or "the man or woman," or thoses mentioned in these latter sections.

However, both sections 3273 and 3274 make it a crime for the father or mother or any other person having the care and control of such infant child (section 3273) or any other person having the legal care

or custody of such minor child (section 3274) to do or neglect to do the things therein mentioned. Section 3273 does not say "or a person" having the care and custody of the child but "any other person." The use of the words "or any *other* person," etc., in these sections, which statutes must be strictly construed, shows that the words apply to persons who are charged with the care and custody of the child whether it be a parent or other person so charged. [People v. Fitzgerald, supra, l. c. 643.] These sections are penal statutes and the rule is well settled that such a statute should be strictly construed and cannot be extended or enlarged by judicial construction so as to embrace persons and offenses not plainly within its terms. [State v. Koock, 202 Mo. 223, 235.] We, therefore, are of the opinion that section 3274 does not provide for the support of a child on the part of its father, putative, lawful, "deemed" lawful or otherwise who has not its legal care or custody, and as the relator has not the care and custody of the minor Glen Canfield, he could not be proceeded against under section 3274.

From our discussion of the various statutes cited, especially sections 311, 311a and 312, it appears that the father, putative or otherwise, of an illegitimate child does not now have the same rights, duties and liabilities as exist between a lawful father and his legitimate child or one that has been legitimated. Consequently, it is unnecessary for us to go into the question as to the rights and duties toward his children of a father who has not their legal care, custody, control or entitled to their services and earnings, the common law relative to these rights of such a father, which he enjoyed largely because it was his duty to support them, having been greatly modified by statute. It is enough to say that at common law the lawful father was under the duty to support his minor children while the unlawful father was not, and the Legislature has not yet gone to the extent of requiring a father of an illegitimate child to support it, except where such a father is successful in a proceeding under the provisions of sections 1813, 1814 and 1814a or has the legal care and custody of the child (section 3274).

As before stated, relator has not the right to the care, custody or earnings of the child and until such time as he has, he certainly cannot be proceeded against under section 2611, Revised Statutes 1919, if in any event under that section. In this connection we might point out that the legislature in 1921 in its rather wholesale amendment of statutes relating to legitimate and illegitimate children, did not see fit to amend section 2611 so as to have it cover children "born out of wedlock."

We desire to thank counsel on both sides of this case for the very able briefs prepared and filed therein by them. We have been given much assistance by counsel in our labors in disposing of this case.

From what we have said the writ should be made permanent and it is so ordered. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.