[1] Herman Williams, the above named defendant, was convicted in the St. Louis Court of Criminal Correction on a charge of non-support of a child alleged to be his child, and his punishment was assessed at one year in the Workhouse. After an unavailing motion for a new trial, he appealed to this court. The information upon which the prosecution was based charged "That Herman Williams in the City of St. Louis, on the 12th day of August 1948 being then and there the father of a child born out of wedlock under the age of sixteen years, to-wit: Herman Jr. 6 years old, did unlawfully wilfully and without good cause, fail, neglect and refuse to provide adequate food, clothing, lodging, medical and surgical attention for said child contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State."
[2] At the trial the prosecuting witness, Mrs. Edythe Grandberry, testified on behalf of the State that she was married to a man named Henry Grandberry in 1937, but had been separated from him since 1940; that at the time of the trial she was living in the City of St. Louis; that she had one child named Herman who was then five years old, having been born on September 5, 1943; that she separated from her husband and left Memphis "the Christmas of 1939" and came to St. Louis, but returned to Memphis for a visit of two days in July 1940; that after the last mentioned date she never saw her husband again; that prior to the birth of said child she had *Page 845 
sexual relations with the defendant; that she did not have sexual relations with other men at about that time, and had no sexual relations with any man other than the defendant in the year prior to the birth of said child; that after the birth of the child, and when it was between two and three months of age, she and defendant and the child lived together for about four months at 4046 North Market Street in the City of St. Louis, after which the defendant left; that thereafter she and the defendant continued to see and visit each other up until the time of the trial; that the defendant had some of his clothes and other personal effects at her home.
[3] The evidence further shows that the prosecuting witness made complaint to the Assistant Prosecuting Attorney because of defendant's failure to support the child, and that thereafter defendant commenced making payments irregularly for the support of the child; that the last payment therefor was the sum of $5 paid by defendant on July 12, 1948. It further appears from the evidence that from January 1, 1948, to February 13, 1948, defendant made regular payments at the rate of $5 per week for the support of the child; that from February 13, 1948, to July 20, 1948, his payments totaled $59. It also appears that the prosecuting witness was receiving aid for dependent children under social security legislation at the rate of $11 per month up to February 1948. The evidence further shows that in 1947 defendant took the child to visit his, defendant's, mother in Little Rock Arkansas.
[4] Mrs. Grandberry, the prosecuting witness, further testified that the defendant caused her to be summoned to the Juvenile Court in St. Louis in the year 1944 or 1945 in an effort being made by the defendant at that time to take the child away from her and send it to the home of defendant's mother, but that defendant was not successful in that effort.
[5] Jasper R. Vettori, Associate Prosecuting Attorney, testified as a witness on behalf of the State that as such officer he was in charge of the child non-support case against defendant in the Prosecuting Attorney's office; that on August 11, 1948, the defendant was summoned to the office of the Prosecuting Attorney for non-support of the child, and at that time defendant told the witness that he had been paying for the support of the child, and the witness asked him to show his receipts; that defendant stated they were at home and that he would produce them. The witness further testified that in the discussion with the defendant on that occasion he asked the defendant if he was the father of the child involved, and the defendant said he was and promised to be in the witness' office the next day with his receipts showing payments for the support of the child; that the next day defendant came to the office with his attorney who informed the witness that they would not pay; that the defendant then denied being the father of the child, whereupon the witness, as Associate Prosecuting Attorney, ordered the defendant arrested. There was evidence that defendant was employed as a taxicab driver in St. Louis during the period of about four years before the trial; that his average weekly earnings were $29 to $30 plus tips. At the close of the State's case the defendant moved that he be discharged on the ground that the State had not proved a case under the law against him. This motion or oral demurrer, as it is referred to in the transcript, was overruled by the court and, as heretofore stated, defendant thereafter duly appealed.
[6] Defendant did not testify at the trial but introduced in evidence Exhibit A which is designated "Transcript of Birth Record (Not a Certified Copy)" issued by the Bureau of Vital Statistics of the City of St. Louis containing the following:
[7] "Name Herman Granberry
[8] Born September 5, 1943, 19__ Sex Male Color Colored The birth of the above-named person has been officially registered in accordance with the laws governing the registration of births. Date of filing 9/29/43."
[9] Said certificate was signed by the Comptroller and Health Commissioner of the City of St. Louis. *Page 846 
[10] Defendant was not represented at the hearing in this court on the appeal and has filed no brief. The State has filed a brief and the Associate Prosecuting Attorney appeared and argued the case at the hearing herein.
[11] This being a criminal case, it is our duty under Section 4150, R.S.Mo. 1939, Mo.R.S.A. § 4150, to examine the record and render judgment thereon regardless of the failure of defendant-appellant to file a brief. State v. Davis, Mo.Sup., 58 S.W.2d 305; State v. Childress, Mo.App., 284 S.W. 520.
[12] The statute under which the defendant herein was convicted provides: "If any man shall, without good cause, fail, neglect or refuse to provide adequate food, clothing, lodging, medical or surgical attention for such wife; or if any man or woman shall, without good cause, abandon or desert or shall without good cause fail, neglect or refuse to provide adequate food, clothing, lodging, medical or surgical attention for his or her child or children born in or out of wedlock, under the age of sixteen years, or if any other person having the legal care or custody of such minor child, shall without good cause, fail, refuse or neglect to provide adequate food, clothing, lodging, medical or surgical attention for such child, whether or not, in either such case such child or children, by reason of such failure, neglect or refusal, shall actually suffer physical or material want or destitution; * * * then such person shall be deemed guilty of a misdemeanor; and it shall be no defense to such charge that some person or organization other than the defendant has furnished food, clothing, lodging, medical or surgical attention for said wife, child or children and he or she shall, upon conviction, be punished by imprisonment in the county jail not more than one year, or by fine not exceeding one thousand dollars ($1,000) or by both such fine and imprisonment. No other evidence shall be required to prove that such man was married to such wife than would be necessary to prove such fact in a civil action." Laws Mo. 1947, pages 259 and 260, § 4420, Mo.R.S.A. § 4420.
[13] The above statute is the result of many changes made by the Legislature during the years since 1867 when it first enacted a statute on the subject matter involved. It would serve no useful purpose for us to present a detailed history of such changes. Those who are interested in that aspect of the statute will find a careful review thereof in State ex rel. Canfield v. Porterfield, 222 Mo.App. 553, 292 S.W. 85, and in a recent case decided by this court, State v. Earnest, Mo.App., 162 S.W.2d 338. Prior to the re-enactment of said statute in 1947 it provided a penalty for the failure of any man or woman, without good cause, to provide "necessary" food, clothing and lodging, etc., for his or her child or children, but in the reenactment of 1947 the word "necessary" was omitted and the word "adequate" substituted in its place. Also in 1947 it was provided: "and it shall be no defense to such charge that some person or organization other than the defendant has furnished food, clothing, lodging, medical or surgical attention for said wife, child or children * * *." Laws Mo. 1947, pages 259, 260.
[14] The only issue in the case at bar is whether or not the defendant, who was not shown to have the care and custody of the child in question, can be convicted and punished for non-support of this concededly illegitimate child. Not having been favored by defendant with a brief indicating any theory on appeal, we must look to his motion for a new trial in the trial court to ascertain upon what tenable ground, if any, he claimed that his conviction was erroneous. One of the grounds of his motion for new trial was as follows: "That the verdict is against the law in that the state failed to show that the defendant had legal care and custody of the child born out of wedlock and who was the subject of this suit."
[15] It is true that the case of State ex rel. Canfield v. Porterfield, supra, appears at first glance to be authority for the proposition that the father of an illegitimate child who does not have the legal care or custody of said child cannot be prosecuted for non-support of such child under the *Page 847 
statute in question, now Section 4420, Laws Mo. 1947, pages 259 and 260. At the time the case of Canfield v. Porterfield, supra, was decided, the subject matter was covered by two sections, namely, Sections 3273 and 3274, R.S.Mo. 1919, as amended by Laws Mo. 1921, page 281.
[16] Examining the statute as it stands today and comparing it with its predecessors throughout the years since its first enactment, we believe the judgment of conviction herein must be affirmed for there appears a constantly increasing concern and clear intention on the part of the Legislature to protect children from the evil effects of abandonment and non-support by their parents or by those to whom their custody and care might be awarded. This intention of the Legislature finally culminated through Laws Mo. 1921, page 281, in the inclusion of all children within the protection of the State, whether "born in or out of wedlock," whereas prior thereto such protection was given only to those children who were born in lawful wedlock or who were legitimatized in accordance with the statutes covering legitimization in force at that time.
[17] A careful reading of the case of Canfield v. Porterfield, supra, shows clearly that it was not a criminal prosecution by the State against a defendant for failure to support a child, as is the case at bar. The Canfield v. Porterfield case was an original civil proceeding in prohibition by the State at the relation of Canfield against the Judge of the Juvenile Court of Jackson County to prohibit said Judge from proceeding against the relator Canfield under another statute which was then Section 2611, R.S.Mo. 1919, Mo.R.S.A. § 9693. In that case the Court of Appeals itself said: "It is substantially conceded by the parties that the sole question before us is whether the juvenile court of Jackson county, Mo., under the provisions of the juvenile court act, mentioned supra, and, particularly, section 2611 thereof, is empowered to require relator to support or contribute to the support of the child, Glen Canfield." State ex rel. Canfield v. Porterfield, 222 Mo.App. 553, 555, 292 S.W. 85, 86. (Emphasis ours.)
[18] The court in said Canfield v. Porterfield case then proceeded by way of discussion and illustration to give an extended history of the common law relating to the legal status of illegitimate children and reviewed at length the law of inheritance in relation to such children as well as their legitimization. It also reviewed the law in relation to parents and guardians of such children. With painstaking care the court pointed out the changes that had been made in the various statutes in relation to such matters throughout the years up to that time. The precise point upon which the court based its decision, however, in said case is shown in the following language which the court used: "As before stated, relator has not the right to the care, custody, or earnings of the child, and, until such time as he has, he certainly cannot be proceeded against under section 2611,R.S. 1919 if in any event under that section. In this connection we might point out that the Legislature, in 1921, in its rather wholesale amendment of statutes relating to legitimate and illegitimate children, did not see fit to amend section 2611 soas to have it cover children `born out of wedlock.'" State ex rel. Canfield v. Porterfield, 222 Mo.App. 553, 565, 292 S.W. 85, 91. (Emphasis ours.)
[19] We note the painstaking care with which the court in the excerpt above quoted confined its decision to the civil statute, Section 2611, R.S. 1919. It did not pretend or purport to decide any criminal case such as the case at bar, nor did it base its decision on the criminal statute dealing with non-support of a child in force at that time.
[20] It thus appears clear that the Canfield v. Porterfield case, supra, was not a criminal prosecution to punish the father of the illegitimate child involved therein, but was an original action in prohibition to prevent the Juvenile Court of Jackson County, Missouri, from proceeding in a suit pending in said court to compel the relator to support his child under Section 2611, R.S. Mo. 1919, which was a civil statute and entirely different from the criminal statute which provides for punishment of a parent *Page 848 
for failure to support his child, and on which the prosecution herein is based. We are, therefore, of the opinion that said case of Canfield v. Porterfield, supra, does not constitute authority for us to reverse the judgment in the case at bar.
[21] A mere reading of the statute upon which the prosecution in the case at bar is based shows that it is quite different from the statute, Section 2611, R.S.Mo. 1919, upon which the decision in the Canfield v. Porterfield case was made. Said Section 2611, supra, appeared in the Article dealing with Juvenile Courts in counties having 50,000 inhabitants and over. It merely authorized such Juvenile Courts to inquire into the ability of the parent or parents of a neglected or delinquent child to support such child and if deemed proper to enter an order or judgment requiring such parent or parents to render such support. The Juvenile Court was given authority to enforce its judgment by a civil execution. It will thus be seen that said statute had nothing whatsoever to do with a criminal prosecution. Hence the decision in the Canfield v. Porterfield case based upon said statute is not applicable to the criminal prosecution case which we now have before us, and was never intended to apply to such a criminal case.
[22] The statute on which the prosecution in the case at bar is based, namely, Section 4420, Laws Mo. 1947, pages 259, 260, makes it an offense for "any man or woman" without good cause, to fail to provide adequate food, clothing, lodging, etc., for "his or her child or children born in or out of wedlock, under the age of sixteen years." There is no requirement that such man or woman who fails to support "his" or "her" child must have the care and custody of such child in order to be guilty of the offense named. It seems clear to us that the bases for decision in the Canfield v. Porterfield case and in the case at bar are widely different and that the decision rendered under the Juvenile Court Statutes of 1919 is no authority for a reversal of the judgment herein based as it is upon the criminal statute enacted in 1947.
[23] Reduced to its simplest terms, we, therefore, have before us a case which is governed by the 1947 statute, supra, wherein it is made a crime for any man or woman who shall without good cause fail, neglect or refuse to provide adequate food, clothing, lodging, etc., for his or her child or children born in or out of wedlock under the age of sixteen years. There was substantial evidence adduced by the State at the trial to show that defendant herein is the parent of the child in question. The prosecuting witness, the mother of the child, so testified. The Associate Prosecuting Attorney testified that the defendant admitted that he was the father of the child. The defendant did not deny or contradict the State's evidence. Furthermore, there was substantial evidence showing that defendant failed to support the child during certain periods and finally refused to do so, although he was able to and did earn substantial wages during that time. Therefore, all the elements necessary to be proved under the statute as it now stands were shown by substantial evidence.
[24] The fact that the State did not prove that the defendant had the legal care or custody of such minor child is immaterial because it is not necessary in a case of this kind to prove that defendant had such care and custody where, as here, there is substantial evidence showing that the defendant is the parent
of the illegitimate child. It is only where the charge of nonsupport of a child is made against one who is not a parent
that the element of having the legal care or custody of such child must be shown in addition to the failure or neglect to provide adequate food, clothing, etc., for such child. This is true because the statute plainly makes it so for it says in a separate statement of such offense: "or if any other person
having the legal care or custody of such minor child, shall without good cause, fail * * * to provide adequate food, clothing, * * * then such person shall be deemed guilty of a misdemeanor." (Emphasis ours.) It is well known that persons who are not the parents of children are frequently awarded the care and custody of children by the *Page 849 
courts and it was the clear intention of the Legislature to make them as well as parents answerable to the law for neglect of their duty.
[25] If it be said that the 1947 statute, supra, opens the way for designing persons to bring the pressure of public prosecution to compel an alleged father to support an illegitimate child where the question of his parentage of the child is clouded with doubt, the only answer is that the enactment of such a statute was and is a matter within the province of the Legislature. The law making an illegitimate child an object of protection by the State was a matter of legislative policy of the State as to which courts are not authorized to interfere. It goes without saying, however, that in view of the forward step taken by the Legislature in making an illegitimate child an object of State protection, trial courts and appellate courts should exercise care in sustaining convictions under the present day statutes and should require substantial proof of all the necessary elements before permitting any such conviction to stand. In the case at bar the State, having produced substantial evidence to prove all the elements of the offense charged, and there being no evidence to the contrary, it is our plain duty to affirm the judgment of the St. Louis Court of Criminal Correction. It is so ordered.
[26] ANDERSON, P. J., and HUGHES, J., concur.
On Motion for Rehearing.
[27] Although defendant neither briefed nor argued this case in this court, he has nevertheless filed a motion for rehearing. It is pertinent to observe that the State is so solicitous of the rights and liberty of citizens that the Legislature has made it the duty of an appellate court to examine the record of a conviction in a criminal case and render a correct judgment thereon even though a defendant after taking an appeal fails to take further steps to contest the conviction. Section 4150, R.S.Mo. 1939, Mo.R.S.A. § 4150. Pursuant to the duty laid upon us by the above statute, we proceed to consider the defendant's motion for rehearing.
[28] Defendant in his motion for rehearing earnestly contends that our opinion is in conflict with the opinion of this court in State v. Barcikowsky, Mo.App., 143 S.W.2d 341. An examination of the Barcikowsky case shows that the prosecution therein was brought under Section 4026, R.S.Mo. 1929, Mo.St.Ann. § 4026. The opinion of this court was handed down on October 8, 1940. The charge against the defendant therein was that he wilfully and without good cause failed, neglected and refused to provide the "necessary" food, clothing and lodging for his child under the age of sixteen years. The evidence showed that the child was illegitimate.
[29] This court in reversing the judgment of conviction that had been rendered against defendant based its decision mainly on State v. Thornton, 232 Mo. 298, 306, 134 S.W. 519, 521, 32 L.R.A., N.S., 841, wherein our Supreme Court said that the only legitimate object of the statute involved "is to secure to infants, who are in future to become citizens of the state, proper care; such care as is necessary to protect their lives and health. In other words, to prevent destitution. It follows from the foregoing that if infant children are receiving necessary
food, clothing, and lodging from any source, there is no occasion for the state to interfere by penal law or otherwise." (Emphasis ours.)
[30] In its opinion in the Barcikowsky case, this court showed that the above rule of the Thornton case, supra, had been expressly approved by the Supreme Court in State v. Winterbauer, 318 Mo. 693, 300 S.W. 1071. A number of other cases to the same effect were also cited by this court. The court pointed out that the proof showed that the child in question was not in need of "necessary" food, clothing or lodging because the mother of the child had at all times provided the "necessary" food, etc. The court further pointed out in said Barcikowsky case that the ability of the defendant to provide for the child had not been shown. Therefore, the judgment of conviction against the defendant therein was properly reversed. *Page 850 
[31] It will thus be seen that the Barcikowsky case was correctly decided on the facts and on the law as it then stood. However, the Legislature, as we pointed out in the opinion proper herein, changed the statute when it was reenacted in 1947 by leaving out the word "necessary" and inserting the word "adequate" in relation to food, etc. Another great difference between the statute as it existed in 1940, when the Barcikowsky case was decided, and the statute, Section 4420, Laws Mo. 1947, pages 259-260, Mo.R.S.A. § 4420, involved in the instant case, is that under the 1947 statute it is no defense to a proper charge of failure to support a child "that some person or organization other than the defendant has furnished food, clothing, lodging etc."
[32] The rule which governed the decision in the Barcikowsky case is, therefore, no longer applicable because of the changes made by the Legislature in the statute under which that case was decided.
[33] It is true that the opinion in the Barcikowsky case went farther than was necessary to a decision of that case by holding that the applicable statute did not require a father, not having the legal care or custody of an illegitimate child, to support such child and cited in support of such holding State ex rel. Canfield v. Porterfield, 222 Mo.App. 553, 292 S.W. 85. However, in the opinion proper herein, we carefully analyzed and distinguished the Canfield v. Porterfield case, supra, from the case at bar, pointing out that said Canfield v. Porterfield case was a civil action in prohibition brought against the judge of a juvenile court under a statute which was entirely different from the one involved herein. Said last mentioned case was not a criminal prosecution as is the case at bar, and constitutes no authority to govern the decision in the case at bar.
[34] The Barcikowsky case, supra, insofar as it holds that the penal statute does not require a father not having the care and custody of an illegitimate child to support such child, should no longer be followed.
[35] Defendant's motion for rehearing herein is overruled.
[36] ANDERSON, P. J., and HUGHES, J., concur.