Jeffrey Patrick **HELMS** and Julia Ann
Helms, by Howard Junior Helms,
Plaintiff-Appellant,

v.

**JUVENILE OFFICER OF CLAY COUNTY,**
Missouri, Defendant-Respondent.

No. 25183.

Kansas City Court of Appeals,
Missouri.

Feb. 2, 1970.

J. William Blackford, Blackford & Wilhelmsen, Kansas City, for appellant.

Max Von Erdmannsdorff, Von Erdmannsdorff, Voigts & Kuhlmann, No. Kansas City, for respondent.

SPERRY, Commissioner.

This is an appeal from a judgment of the circuit court against Howard Junior Helms, hereafter referred to as appellant, in the sum of $918.47, in favor of Clay County, Missouri. This judgment is for money spent by Clay County through the juvenile court, to provide food, clothing, shelter, medicines and other necessities in foster homes, for Jeffrey Patrick and Julia Ann Helms, infant twins born to appellant

and his then wife, Nanette Sue Helms (who became Mrs. Swope before this judgment was rendered).

On March 4, 1968, there was a hearing in the juvenile court of Clay County, Missouri, concerning the care and custody and support of these children. Appellant was present and represented by counsel. It was shown that the parents of the children were divorced and that it came to the attention of the juvenile court, in July of 1967, that Mrs. Helms had legal custody of these twin children; that she had been awarded an alimony and child support judgment against appellant; that appellant had quit his job at Ford Motor Company, where he had a salary of $15,000.00 per year; that he had disappeared; that Mrs. Helms was destitute; and that she had reported her condition to the Clay County welfare and juvenile authorities and asked for assistance for these two children. The court ordered that the children be cared for and supported by the County in foster homes pending further developments. The total sum expended therefor was the amount stated in this judgment.

Eventually the court awarded custody of the children to the mother, Nanette Helms Swope. Thereafter, this judgment was rendered as reimbursement to Clay County, as aforementioned.

This order was made under authority of V.A.M.S. § 211.241. That section consists of four numbered paragraphs. The first and second paragraphs provide as follows:

"1. When the juvenile court finds a child to be within the purview of applicable provisions of Section 211.031 it may in the same or subsequent proceedings, either on its own motion or upon the application of any person, institution or agency having the custody of such child, proceed to inquire into the ability of the parent of the child to support it or contribute to its support. If the parent does not voluntarily appear for the proceeding, he shall be summoned in the same manner as in civil cases and the summons in the case may issue to any county of the state.

"2. If the court finds that the parent is able to support the child or to contribute to its support, the court may enter an order requiring the parent to support the child or contribute to its support and to pay the costs of collecting the judgment. * * *".

■ Appellant's complaint number two is to the effect that this is a penal statute and must be strictly construed. He cites State ex rel. Canfield v. Porterfield, 222 Mo.App. 553, 292 S.W. 85. That decision was rendered by this court in 1927. It dealt with a situation where the father of a child *born out of wedlock* had failed to support said child. The action was based on the provisions of Section 3274, Laws of Missouri, 1921, p. 281. See State ex rel. Canfield v. Porterfield, supra. The statute made such conduct a crime. We are here dealing with a statute which is not criminal in nature and to which criminal procedures do not apply. This is a remedial statute and should be liberally construed with a view to the correction of the evils intended to be corrected by the legislature.

In 27 Missouri Law Review, 406, there appears an article dealing with the law in the area of child custody. It is there said (409) that proceedings in juvenile court are governed by equity practice and procedures; that if the court finds that parents are financially able to support a child, the court may require such support (410); that the juvenile court is a court of equity (412); that juvenile laws are not criminal in nature and do not involve procedures for punishing crimes; that their purpose is the protection and support of neglected children and the reformation of delinquent children (412–413). In the case of In re C——, Mo.App., 314 S.W.2d 756, 760, it was said that the purpose of the juvenile act is not to convict criminals but to safeguard and reform erring children and to protect and provide for neglected children; that, indubitably, a juvenile case is not a

criminal case and partakes of the character of a "civil case", insofar as appellate procedure and review are concerned.

In Attorney General's opinion No. 182 (April 11, 1967) it is stated, in part, as follows:

"Under Section 211.241, RSMo., the court may, *either on its own motion or upon application of any person, institution or agency having custody of such child,* inquire into the ability of the parent to support or contribute to the support of such child *and if the court finds the parent is able to support or contribute to the support,* the court may enter such an order which order may be enforced by execution as provided therein. If the court finds the parent is not able to support the child as provided herein, the necessary support shall, unless the court commits the child to a person or institution willing to receive the child without charge, be paid by the county, but only upon approval of the judge of the juvenile court. \* \* \*". (Emphasis ours.)

■ The juvenile court properly assumed jurisdiction over the disposition of these children, who were born in wedlock, September 1, 1966. The evidence was that they were abandoned by appellant, their natural father; that the mother had no funds with which to provide shelter and had but a few cents with which to buy food when she sought help from the welfare department of Clay County. It was shown that appellant not only had failed and neglected to provide support for these children although, until he absconded, he earned wages of $15,000.00 per year.

■ A fair and liberal construction of the law is that it was intended to provide a means, by which the father of such children, whose legal duty it is to support them, might be legally compelled to do so. That is the purpose of this part of the statute. In Holley v. Mississippi Lime Co., Mo., 266 S.W.2d 606-609, it was held that it is the duty of a father to support his minor children even if the parents are divorced and the child is being supported by the mother.

■ Appellant contends that, since the judgment did not precede the act of Clay County in providing food, clothing and other necessities of life, it was beyond the power and jurisdiction of the court to render it, after same had been furnished at public expense. Such would be a narrow and strict construction of the law, contrary to the intent expressed by the legislature.

■ Appellant also contends that the court lacked jurisdiction to render the judgment because there was no formal finding to the effect that appellant was financially able to pay for the support of his children. At no time has appellant contended that he is not able to support or pay for the support of his children. That was never an issue in the case. In his motion for a new trial he positively asserted his financial ability to support these children. Under the facts here of record, we hold that the court found, from the evidence, that which was necessary for it to find in order to support the judgment. The evidence was ample to prove, and appellant concedes, that he is financially able to support his children.

Appellant contends, without citation of authority, that the judgment herein subjects him to "double jeopardy" in view of the fact that the divorce court had entered judgment for alimony and support money. The record is unclear as to how much was paid on this judgment but it is clear that a relatively small amount, only, was ever paid. There will be ample reason and opportunity for the court to legally credit, on the alimony and child support judgment, the money which may be paid on this judgment, which is for support money paid by Clay County at a time when the children were not in custody of the divorced wife, Nanette Sue Helms Swope. The money here spent was expended during the pen-

dency of the court's inquiry into the facts and final disposition of the case.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY is adopted as the opinion of the Court. All concur.