**In the Interest of S.E.S.,**

**Alan GREMLI, Clay County Juvenile Officer, Respondent,**

v.

**J.J.S., Appellant.**

**No. WD 45883.**

Missouri Court of Appeals,
Western District.

Jan. 19, 1993.

Peter M. Schloss, Kansas City, for appellant.

Max VonErdmannsdorff, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SPINDEN, Judge.

The trial court ordered placement of S.E.S. in a county group home after hearing evidence that her mother has shown no interest in rearing her and that S.E.S. and her father could not live together because of an ongoing battle over house rules. During the past two years, S.E.S. has lived with a sister and with a friend's parents because neither her mother nor her father wanted custody of her. The father, J.J.S., does not contest the juvenile court's assertion of jurisdiction over S.E.S. or its placing her in a group home. He does contest the grounds on which the court acted: parental neglect. He also contends the court erred in ordering him to pay the county $350 per month for his daughter's care in the group home, and he challenges the court's order that he pay one-half of his daughter's clothing, medical, dental, and counseling expenses. We affirm.

S.E.S. was born on July 31, 1976, during J.J.S.'s marriage to M.B. When the couple divorced in 1984, the court granted custody of S.E.S. to M.B., but by then S.E.S. had already moved to her father's house. Although S.E.S. lived permanently with J.J.S., the couple did not ask the court to alter its custody order.

On January 2, 1992, the juvenile division of the Clay County Circuit Court asserted jurisdiction over S.E.S., pursuant to § 211.-

031.1(1), RSMo 1986, and found, pursuant to § 211.183.5, RSMo Supp.1991, that S.E.S. needed care and protection because of parental neglect. The court ordered that she be made a ward of the court and be placed in the county girl's group home until she was 17 years of age. The court also ordered J.J.S. and M.B. to pay $350 per month each for her support and to pay half of her clothing, medical, dental, and counseling expenses.

J.J.S. challenges the trial court's finding that he had neglected S.E.S.[1] He asserts the findings were not based upon substantial credible evidence. He argues that the record established that S.E.S. was a "runaway, truant, drug abuser, who had engaged in theft and dishonesty in an effort to thwart the imposition of reasonable parental control," so the court should have asserted jurisdiction under § 211.031.1(2).[2]

After a hearing, the trial court entered these findings:

1. [I]n February, 1990, in Clay County, Missouri, the child began living with ... her sister and brother-in-law; since then and to [December 11, 1991], the natural father, [J.J.S.], has had no contact whatsoever with the child;

2. [D]uring or about the week of September 9, 1991, the child ran away from her sister's home;

3. [O]n or about October 6, 1991, the child returned to her sister's home and sometime, during that same week, she ran away again;

4. [Her sister] refused to take the child back into her home;

5. [O]n or about October 11 or 12, 1991, the child began residing with [E.S.] and [F.S.]; neither parent knew about her whereabouts and/or made arrangements for the child's care;

6. [S]ince about October 23, 1991, numerous attempts have been made by the Clay County Division of Family Services and the Clay County Juvenile Justice Center to prevent or eliminate the removal of the child from the natural mother, [M.B.], who has legal custody; since about October 23, 1991, the natural mother has refused to take responsibility for the child and to cooperate with the agencies involved;

7. [O]n or about November 18, 1991, the natural father, [J.J.S.], refused to take responsibility for the child;

8. [T]he child is in need of the care and protection of the Court.

"Our standard of review is one of deference to the trial court whose judgment will be sustained unless there is no substantial evidence to support it." *In Interest of K.H.*, 652 S.W.2d 166, 167 (Mo.App.1983). We consider all the evidence and its reasonable inferences in the light most favorable to the court's judgment. *In Interest of J.M.P.*, 669 S.W.2d 298 (Mo.App.1984).

■ The record contains sufficient evidence to support the trial court's findings. The court heard evidence that S.E.S. lived with her father for about six years until, in February 1990, she moved out in a dispute about house rules and moved to her adult sister's house. J.J.S. tried one time, on the day S.E.S. ran away to her sister's house, to force her to return home with him, but

---

1. In his Point Relied On, J.J.S. contends that the court's findings that services were available to him before S.E.S.'s removal and that he refused to cooperate with and refused the services offered by the Division of Family Services and the Clay County Juvenile Justice Center were not based upon substantial evidence. In his argument, however, J.J.S. focuses solely on the court's finding of neglect, so we do, too. See *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978).

2. That statute grants the juvenile court exclusive jurisdiction over cases "[i]nvolving any child who may be a resident of or found within the county and who is alleged to be in need of care

and treatment because: (a) [t]he child while subject to compulsory school attendance is repeatedly and without justification absent from school; or (b) [t]he child disobeys the reasonable and lawful directions of his parents or other custodian and is beyond their control; or (c) [t]he child is habitually absent from his home without sufficient cause, permission, or justification; or (d) [t]he behavior or associations of the child are otherwise injurious to his welfare or to the welfare of others; or (e) [t]he child is charged with an offense not classified as criminal, or with an offense applicable only to children[.]"

S.E.S. refused. J.J.S. gave S.E.S. an ultimatum that she could not return to his house until she was willing to abide by his rules. He did not see S.E.S. again until these proceedings began more than two years later. During that time, he made no attempts to see her or to make contact with her. S.E.S. lived with her sister for two years. She moved out as the climax to an ongoing dispute with her sister about house rules. She moved in with E.S., a school friend's parent. E.S. went to J.J.S.'s house to tell him where his daughter was. He told E.S. that he did not care—that he wanted nothing to do with her because he was extremely upset with her. S.E.S. lived with E.S. for about three months. During the time S.E.S. stayed with her sister and with E.S., J.J.S. did not attempt to contact her, and he did not give her financial support. When juvenile authorities became involved in the case, J.J.S. agreed to provide financial support but indicated that he did not want her to move back to his house. While this court is sympathetic with the plight of a father endeavoring to manage an incorrigible child, we conclude, after giving appropriate deference to the trial court, that these facts supported the court's finding that J.J.S. had neglected his daughter.

▆▆▆ J.J.S. also contends that the trial court erred in ordering him to pay $350 per month for S.E.S.'s support and to pay one-half of her clothing, medical, dental and counseling expenses. He argues that the $350 per month support order exceeded the maximum $300 a month assessed in the past 10 years against any parent with a child in the group home. Further, he asserts that the $350 was not based upon substantial evidence of the cost of S.E.S.'s care in the juvenile group home.

The trial court's order was authorized by § 211.241, RSMo 1986, which provides:

1. When the juvenile court finds a child to be within the purview of applicable provisions of section 211.031 it may in the same or subsequent proceedings, either on its own motion or upon the application of any person, institution or agency having the custody of such child, proceed to inquire into the ability of the parent of the child to support it or contribute to its support....

2. If the court finds that the parent is able to support the child or to contribute to its support, the court may enter an order requiring the parent to support the child or to contribute to its support and to pay the costs of collecting the judgment.

Section 211.241 is "a remedial statute and should be liberally construed with a view to the correction of the evils intended to be corrected by the legislature." *Helms v. Juvenile Officer of Clay County*, 450 S.W.2d 480, 481 (Mo.App.1970). Section 211.241 permits a court to order a parent to support his or her child if the parent has the financial resources to provide the support. The county must pay for a child's care only in cases of parents unable to support their child. Section 211.241.4.

Section 211.241 does not put a ceiling on the amount a court can order a parent to pay. The only factor the court must consider is the parent's ability to pay. The trial court heard evidence that J.J.S. was earning $35,000 a year as a monitor of the Kansas City public school desegregation program for the federal courts and could afford the $350 a month payment.

As to J.J.S's claim that the record does not support the trial court's order that he pay $350 a month, the court heard evidence that the group home's actual cost is approximately $42.82 per day per child. His claim is without merit.

▆▆▆ Finally, J.J.S. argues that the court's order that he pay one-half of S.E.S.'s clothing, medical, dental and counseling expenses was unenforceable because it was too vague. We disagree.

We are guided by our previous decision, *Graf v. Bacon*, 800 S.W.2d 88 (Mo.App. 1990), in which we considered whether a decree that the appellant pay one-half the uninsured medical, dental and optical expenses was "too vague to be enforceable." In ruling against the appellant, the *Graf* court stated, "[Appellant] is not seeking clarification of the vague provision. No dispute has arisen between the parties as to the meaning of it[.]" *Id.* 800 S.W.2d at

90. Moreover, the court concluded that a vague order is not necessarily a nullity. A "vague provision has enough force that it may be the basis for a new order correcting the deficiency of the original upon motion to modify." *Id.*

J.J.S. does not ask this court to clarify the allegedly vague provision. He does not establish any dispute arising from the order. No one has sought to enforce the order. Consistent with *Graf*, we discern no basis for granting him relief at this time.

We conclude, therefore, that the trial court properly exercised jurisdiction pursuant to § 211.031.1(1) and properly required J.J.S. to pay $350 a month for S.E.S.'s support in the group home. Because no dispute has arisen concerning enforcement of the court's order requiring J.J.S. to pay one-half of S.E.S.'s clothing, medical, dental, and counseling expenses and because he is not seeking clarification of the provision, we affirm that portion of the court's order, too.

All concur.