Julie MEHRER, Appellant,

v.

DIAGNOSTIC IMAGING CENTER, P.C., Respondent.

No. WD 63605.

Missouri Court of Appeals, Western District.

Feb. 22, 2005.

Frank B. Williams McCollum, Stacy Murrow Bunck, Kansas City, for Appellant.

Shirley Eileen Goza, Mark Christopher Tatum, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

Julie Mehrer appeals after a judgment, following jury trial, in favor of her former employer, Diagnostic Imaging Center, P.C. ("Diagnostic"), upon her claim for wrongful discharge as a "whistleblower." She contends that she was improperly barred from showing and making reference that Diagnostic's corporate counsel and trial counsel were employed by the same law firm. She also claims that the trial court erred by quashing subpoenas transmitted by facsimile to Diagnostic's corporate counsel and to its records custodian. Finally, she raises one point regarding the exclusion of an exhibit that quoted from a Supreme Court case and one point of instructional error. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Julie Mehrer was formerly employed by Diagnostic Imaging Center as a practice development manager. Her duties were primarily to solicit business from referring physicians. Mehrer was terminated in May 2002. She was advised that her termination was due to a restructuring of Diagnostic's marketing department, in which the two person/two-manager department was being reorganized into one with a single manager with two subordinates who would act as public relations representatives. In eliminating one of the two managerial positions, Diagnostic took the position that it elected to retain Mehrer's co-manager Barb King, based upon King's superior performance, tenure, and accountability, as compared to Mehrer. Diagnostic later added a third public relations representative position to the department.

Mehrer filed a claim alleging that her discharge was in retaliation for both reporting to her superiors a failure of the employer to report a suspected case of child abuse as required by Section 210.115, RSMo 2000, and her reporting of a breach of patient confidentiality by two other employees of Diagnostic. Both allegations arose out of a conversation involving Mehrer and two co-employees at a copy machine in January 2002.

Mehrer became involved in a conversation between Carol Winter, Diagnostic's quality assurance safety manager, and Ka-

thi Crouch, the director of clinical operations. For her part of the conversation, Mehrer was asked about child abuse reporting procedures at Children's Mercy Hospital ("CMH"), where she had previously worked as a pediatric nurse. She claimed she told Winter and Crouch that it was CMH policy that, when hospital staff suspected that a child patient had been abused, that the patient and the family members would be held at the hospital and the child's primary care provider would be contacted. Mehrer testified that Winter then said to Crouch "We did the wrong thing."

Mehrer testified that she reported the conversation to Diagnostic's risk manager, Lisa Kjar, together with her belief that a suspected child abuse case had not been reported in accordance with state law. Kjar testified at trial, stating that she spoke with Dr. Jennifer Crawley, who stated that the x-rays of one of Crawley's child patients had shown injuries indicative of child abuse and that the doctor had called the child's primary care physician to discuss the x-ray and her suspicions. Kjar also testified that, following that conversation, she was instructed by Crouch to contact Diagnostic's corporate counsel, an associate attorney with the firm of Shook, Hardy & Bacon.

Mehrer also testified that she reported to her direct supervisor, Michael Wright, Diagnostic's chief financial officer, the conversation between her, Winters, and Crouch and discussed her concerns about whether confidential patient information had been improperly disclosed to Winter in the course of that conversation. She also discussed with Dr. Angela Noto, Diagnostic's corporate compliance regulator, her suspicions regarding a possible breach of confidentiality and failure to report a child abuse incident. Mehrer believed that confidential patient information had been improperly shared with Winter. Dr. Noto directed her back to Dr. Crawley, the organization's vice-president.

Diagnostic presented testimony that no incident of suspected child abuse happened in January 2002. Instead, Diagnostic contends that the conversation Mehrer became involved in merely concerned the review and revision of Diagnostic's child abuse reporting policies. Both Kathi Crouch and Carol Winter were on the policy revision committee, and Crouch had been directed to focus on the child abuse policies. As there was no actual child abuse incident, it contended that there was no wrongdoing for Mehrer to report, whether in terms of a failure to report suspected child abuse or through a breach of client confidentiality.

The day following her termination, Mehrer's counsel sent a letter to Diagnostic alleging defamation by Barb King and threatening legal action. No allegations of wrongful discharge were raised in that letter. Mehrer ultimately filed suit for wrongful discharge, however, claiming that her discharge from Diagnostic was not due to restructuring, but was instead in retaliation for her reporting of a breach of patient confidentiality and the failure to follow required protocols for reporting suspected child abuse to the proper authorities. The matter proceeded to jury trial, but the only theory presented to the jury was Mehrer's claim that she was wrongfully discharged for reporting the failure of Diagnostic employees to advise proper authorities regarding the suspected child abuse incident. The jury returned a unanimous verdict in favor of Diagnostic.

Mehrer appeals.

## DISCUSSION

As a general proposition, Missouri is an "employment at-will" state, in which an employer could discharge an employee at

any time, with or without cause, unless the employee was protected by some statutory provision. *See Porter v. Reardon Mach. Co.*, 962 S.W.2d 932, 936 (Mo.App.1998). For example, Section 287.780, RSMo, prohibits the termination of an employee for exercising any of the employee's rights under the workers' compensation law.

■ While certain exceptions to the employment at-will doctrine have been created by statute, other exceptions have arisen through case law. Specifically, Missouri courts have recognized a limited, narrow public policy exception to the employment at-will doctrine. That exception permits an employee to seek recovery for wrongful termination in one of three circumstances where the termination was in retaliation for: (1) the employee's refusal to violate a statute; (2) the employee's reporting violations of law by fellow employees or supervisors; or (3) employee's assertion of some other legal right. *See Luethans v. Washington Univ.*, 894 S.W.2d 169, 171 n. 2 (Mo. banc 1995). To trigger the policy exception, the Missouri Supreme Court has stated that the reasons for the employee's discharge must implicate "a constitutional provision, a statute, or a regulation based upon statute." *Id.*

Mehrer's suit is founded upon the second category under the public policy exception, as she claimed that she was wrongfully discharged as a result of reporting wrongdoing, namely alerting Diagnostic management regarding the failure to report to the proper authorities a suspected child abuse incident or the improper disclosure of confidential patient information. This second category is often termed the "whistleblower exception."

*I. In–Court References to the Relationship Between Diagnostic's Corporate and Trial Counsel*

■ Mehrer raises five points on appeal, some raising multiple grounds of alleged error. In her first point on appeal, Mehrer argues that the trial court erred in prohibiting her from making reference that Diagnostic's risk manager communicated to their corporate counsel, an attorney belonging to the same firm as Diagnostic's trial counsel, that a suspected child abuse incident had been reported to her by Mehrer in January 2002. As a preliminary matter, we note that Mehrer was not prohibited from eliciting testimony by Lisa Kjar that she consulted with Diagnostic's corporate counsel concerning a policy question arising out of a suspected child abuse incident. Instead, she was merely prohibited from eliciting testimony or making reference to the fact that Diagnostic's corporate and appellate counsel belonged to the same law firm. Mehrer, here, argues that she should have been allowed to disclose that relationship to the jury.

Mehrer takes the position that the connection between Diagnostic's corporate and trial counsel was relevant because the issue of whether there was any communication between employees of Diagnostic and their corporate counsel was subject to dispute between the parties. Diagnostic claimed at trial and argued to the jury that there had been no mention of such an incident to their corporate counsel. Mehrer argued that such communications had taken place. Each side presented evidence at trial in support of its position.

Mehrer argues that testimony and reference to the fact that Diagnostic's corporate counsel was employed by the same firm as the company's trial counsel was probative on the issue of rebutting Diagnostic's claims "that a suspect child abuse incident never occurred." She asserts that, "If the jury had been informed that the corporate counsel to whom Risk Manager Lisa Kjar said made a report of suspect child abuse *was in the same law firm now defending*

*Diagnostic* that this factual information would have influenced the jury's decision whether it was reasonable for Mehrer to believe there was a suspected child abuse incident" (italics added).

However, Mehrer fails to show how that information would lend increased support to an inference that such an incident had occurred, or if not, that Mehrer would have had a reasonable basis for believing that an incident of that nature had taken place. She fails to explain how disclosing the connection between Diagnostic's trial and corporate counsel would have had any practical relevance to the case. Moreover, she is not taking the position that such information was necessary to cast aspersions on the trustworthiness of Diagnostic or its trial counsel. She expressly denies on appeal that she was attempting to show that the law firm was engaged in a "cover up" regarding the incident.

■ The jury was allowed to hear testimony that a suspected child abuse incident was reported to and discussed with Diagnostic's corporate counsel. Mehrer presents no convincing argument that allowing that testimony to reveal that the corporate counsel and trial counsel were employed by the same law firm would have had any bearing on the issues at trial or would have lent any additional weight to her theory of the case. "The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991) (citing *Carlyle v. Lai,* 783 S.W.2d 925, 928 (Mo.App.1989)). Here, Mehrer has failed to show how disclosing the connection between Diagnostic's corporate counsel and its trial counsel would have tended to prove or disprove any fact in the case or corroborated any other relevant evidence in the case.

■ Simply put, the testimony was irrelevant. A trial court does not abuse its discretion when it excludes irrelevant evidence. *See Liszewski v. Union Elec. Co.,* 941 S.W.2d 748, 756 (Mo.App.1997). The trial court, then, acted within its discretion in excluding testimony that Diagnostic's corporate and trial counsel were employed by the same law firm. Mehrer also raises certain arguments in her point on appeal that allege the restrictions placed on her were improper because the information was not protected by the attorney-client privilege or work product doctrine. She fails to develop these arguments in her brief, however. We consider them to be abandoned. *Faith Baptist Church of Berkeley, Inc. v. Heffner,* 956 S.W.2d 425, 426 (Mo.App.1997).

Mehrer's first point on appeal is denied.

## II. Subpoena to Diagnostic's Corporate Counsel

Mehrer's second point contends that the trial court improperly quashed a subpoena issued to Diagnostic's corporate counsel. Said counsel was a resident of Kansas and while her firm had offices in both Missouri and Kansas, her place of employment was in the Kansas office. Mehrer attempted to serve the subpoena to that attorney via facsimile. Diagnostic responds that the subpoena was properly quashed by the trial court because it was not served in accordance with Rule 57.09 and Section 491.110, RSMo. Further, Diagnostic points out that the corporate counsel's attendance at trial could not be secured by a subpoena (unless found in Missouri), given that she was beyond the subpoena power of the Missouri courts because she was a Kansas resident and was not employed within Missouri.

■ Either the sheriff, a sheriff's deputy, or any person who is not a party and who is at least eighteen years of age may

serve a subpoena. Rule 57.09(d). The subpoena is served by delivering it to that person and tendering the fees and mileage that they would be entitled to if attending court. *Id.* The parties refer us to no reported Missouri case interpreting the "delivery" requirement of Rule 57.09(d), nor have we found any cases through our own research. Looking to the Federal Rules of Civil Procedure, we note that Rule 45(b)(1) also states that service of a subpoena is accomplished "by delivering a copy thereof to such person." Given this similarity of language, interpretations of that rule provide some guidance in determining what methods of "delivery" should be considered proper service. *See Giddens v. Kansas City S. Ry. Co.,* 29 S.W.3d 813, 820 (Mo. banc 2000).

The Eighth Circuit addressed the "delivery" issue in *Firefighters' Institute for Racial Equality v. City of St. Louis,* 220 F.3d 898 (8th Cir.2000). In *Firefighters,* a party attempted to serve subpoenas on a nonparty witness by transmitting them via facsimile and by sending a copy of the subpoena to the witness via regular (as opposed to certified) mail. *Id.* at 903. While observing that "[w]hen a non-party is served, the method of service needs to be one that will ensure the subpoena is placed in the actual possession or control of the person to be served," *id.* (citing *Doe v. Hersemann,* 155 F.R.D. 630, 630 (N.D.Ind.1994)), it found that neither facsimile transmission nor regular mail was sufficient to satisfy this principle, given that neither method provided a means by which delivery of the subpoena to the witness could be assured. *Id.*

■ We find *Firefighters* to be persuasive and conclude that transmitting a subpoena via facsimile to a nonparty is insufficient to constitute "delivery" under Missouri Rule 57.09(d), when there has been, as here, a challenge to the adequacy of service.[1] Under *Firefighters,* the trial court did not err by quashing the subpoena. The subpoena was not served properly not only because it was transmitted via facsimile, but also because it was not directed to the witness but instead to Diagnostic's trial counsel. Moreover, O'Brian could not be subpoenaed by a Missouri court, since she was neither a party to the action (which would have made her subject to personal jurisdiction by the court) nor did she reside or work within the borders of Missouri (and thus outside the geographical range of the trial court's subpoena power).

Mehrer asks the court to overlook these "procedural deficiencies" and hold that the trial court erred in also concluding that the subpoenas violated attorney-client privilege and the work product doctrine. We need not reach those issues, however. The subpoena was not properly served and was, therefore, insufficient to compel the attorney's appearance or testimony at trial. Point denied.

### III. Subpoena Directed to the Records Custodian for Diagnostic's Corporate Counsel

Mehrer's third point on appeal concerns service of a *subpoena duces tecum* directed to the records custodian for Diagnostic's corporate counsel that requested records regarding the alleged January 2002 suspected child abuse incident. Diagnos-

1. This is not to say that transmitting a subpoena via facsimile is never adequate. The recipient of the subpoena can certainly agree to accept such alternate means of delivery and waive the formal requirements of Rule 57.09. Alternatively, if there was no formal acceptance of such alternate means of service, yet the recipient fails to raise any objections relating to service, those deficiencies in service would be waived.

tic's trial counsel sought to quash that subpoena on the basis that it was improperly served and sought information that was protected by attorney-client privilege and the work product doctrine. The trial court quashed this subpoena without significant discussion or analysis.

As with the subpoena directed to Diagnostic's corporate counsel, the subpoena at issue in this point on appeal was also transmitted via facsimile. Thus, the same infirmities of service with regard to the first subpoena are present with regard to this subpoena. Lacking any indication in the record of some agreement to accept service via facsimile, we cannot conclude that there has been any waiver. Further, sufficiency of service of the subpoena was challenged before the trial court. We conclude that the trial court did not err in quashing the subpoena, for the reasons outlined in our discussion of the previous point. Mehrer's third point on appeal is denied.

## IV. Exhibit Regarding Missouri Duty of Confidentiality of Patient Information

In her fourth point on appeal, Mehrer argues that the trial court erred in excluding her Exhibit 2, which was an excerpt from *Brandt v. Medical Defense Associates,* 856 S.W.2d 667 (Mo. banc 1993). That excerpt contained a discussion concerning a physician's fiduciary duty to protect the confidentiality of patient information, and Mehrer sought to admit it with regard to her claim that she was wrongfully terminated because she reported a breach of patient confidentiality to her superiors.

We need not reach the merits of this issue, as the exhibit in question was relevant only with regard to a theory of the case that was not submitted to the jury[2] and the failure to submit that theory is not challenged on appeal.[3] Instead, the case was submitted solely upon the theory that she was wrongfully discharge for raising an alert regarding the failure to report a suspected child abuse incident to the proper authorities. While Mehrer, in her next point on appeal, challenges the verdict director that was submitted to the jury, her argument treats only the theory that was actually submitted and the form of the instruction submitted. She does not raise an argument in that point that the trial court erred by failing to submit the breach of confidentiality theory to the jury.

There is no contention that the exhibit in question was relevant to any other issues

---

**2.** It appears from the record that the primary grounds for the refusal to submit the case on that theory was a conclusion that the court could not look to published court decisions as a source of public policy under a wrongful discharge theory. This conclusion appears to have been drawn from language in *Luethans v. Washington University,* 894 S.W.2d 169, 171 n. 2 (Mo. banc 1995), that suggests that the sources of public policy for wrongful discharge claims are limited to constitutional provisions, statutes, and regulations. At least one commentator has suggested that the sources of public policy in Missouri wrongful discharge cases should include court decisions. *See* Brock Rowatt, Comment, *The Public Policy Exception To Employment At Will: Can Judicial Decisions Be Used As A Source of*

*Public Policy?,* 62 U.M.K.C. L.Rev. 325, 345 (1993).

**3.** Nor do we suggest that the exhibit would be a proper way to inform the jury of the "law" in any event. The usual method of instructing the jury about the law applicable to the case is by jury instruction. Although, there may be some exceptions, as, for example, when the jury needs to be advised of some law or legal principle providing a factual element of a malpractice case, such as the applicable statute of limitations in the context of a legal malpractice claim alleging an attorney's failure to file suit within the statutory deadline.

in the case other than the breach of confidentiality theory. Given that the case was not submitted upon that theory, the exclusion of that exhibit was not error. *C.f. In re Estate of Carroll,* 857 S.W.2d 848, 854–55 (Mo.App.1993) (as theory of the case certain evidence was solely related to was not submitted to jury, the relevance and prejudicial effect of that evidence was hypothetical). Point denied.

## V. Verdict Director

In her final point on appeal, Mehrer contends that the trial court erred in failing to submit her proposed verdict director because it followed the language of the instruction quoted within *Brenneke v. Department of Missouri, Veterans of Foreign Wars of U.S. of America,* 984 S.W.2d 134 (Mo.App.1998). Within the same point she contends that Diagnostic's verdict director was not supported by Missouri law; placed an impermissibly high burden upon her; misled, misdirected, or confused the jury because it was not simple, brief, impartial or free from argument; and improperly required a finding that she had a "reasonable belief" that suspected child abuse had occurred.

 Claims of instructional error present questions of law which we review *de novo. Harvey v. Washington,* 95 S.W.3d 93, 97 (Mo. banc 2003). However, we view the evidence and inferences that may be drawn therefrom in the light most favorable to the submission of the instruction. *Wright v. Barr,* 62 S.W.3d 509, 526 (Mo.App.2001). Here, there was no applicable MAI instruction. A non-MAI instruction must be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b). On appeal, we review a non-MAI instruction to determine "whether the jury [could] understand the instruction and whether the

instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict." *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 462 (Mo. banc 1998) (quoting *Brown v. Van Noy,* 879 S.W.2d 667, 672 (Mo.App. 1994)). What constitutes the ultimate facts will differ on a case-by-case basis, depending on the issues in dispute between the parties. *See id.*

Because the trial court can not be convicted of error in failing to give Mehrer's verdict director if the verdict director that it gave was proper, we must first consider the arguments against that verdict director. We are constrained in that analysis, however, because Mehrer has failed to preserve any of the deficiencies she now points to with the verdict director.

While a number of verdict directors were proposed by the parties, the trial court accepted and submitted to the jury the verdict director proposed by Diagnostic:

Your verdict must be for plaintiff Julie Mehrer if you believe:

First, plaintiff had reasonable cause to suspect (1) that a child had been subjected to abuse and (2) that Diagnostic Imaging Centers failed to report or cause a report to be made to the Division of Family Services; and

Second, plaintiff reported to Diagnostic Imaging Centers that she had reasonable cause to suspect (1) that a child had been subjected to abuse and (2) that Diagnostic Imaging Centers failed to report or cause a report to be made; and

Third, plaintiff was discharged because she reported that she had reasonable cause to suspect (1) that a child had been subjected to abuse and (2) that Diagnostic Imaging Centers failed to report or cause a report to be made; and

Fourth, plaintiff was damaged as a result of her discharge.

■ Mehrer acknowledges the provisions of Rule 70.03: "No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of objection.*" (italics added). The only verbalized objection to the verdict director during the instruction conference was to the phrase "made to the division of Family Services." Nor did Mehrer expand upon her objections in her motion for new trial. In recognition of the sparseness of the instruction conference record, Mehrer says that she stated her objections to the given verdict director by offering her own, different, instruction.

Although it would seem likely that there must have been other discussions about instructions in this non-MAI case, we are provided no record of such discussions. And the most the trial court was provided (at least as far as the record would show) to support the three verdict directors that Mehrer offered is an argument that they are based on *Brenneke v. Department of Missouri, Veterans of Foreign Wars of the United States of America,* 984 S.W.2d 134 (Mo.App.1998). That case does not, however, approve the instruction given but only quotes it before declining to review a complaint about the causation language that was not made to the trial court and, therefore, not preserved.

The *Brenneke* instruction is similar, although not identical, to the three alternatives offered by Mehrer. But she provides us no significant articulation on the record below explaining why her non-MAI instruction is better than that given or what was wrong with the instruction given, other than it is different than her version. Although one of the more significant differences is the inclusion by defendant of the "reasonable cause to suspect" language, she did not state an objection to that language on the record or state in support of her verdict director why that language was not proper. *Brenneke* does not consider such language, one way or another.

Gratuitously, we note that there are various grounds upon which the trial court could have rejected Mehrer's proposed instructions. For example, there was evidence and discussion about breach of confidentiality. Mehrer's instruction submitted that she "reported to her superiors or other proper authorities a wrongdoing or a violation of law or public policy by a co-employee." This proffer seems vague and misleading based on the multiple theories and evidence in the case. In any event, we do not believe that her proffered alternative verdict directors constituted on this record a specific objection to the instruction given by the trial court. Point denied.

Finding no reversible error in the proceedings below, the judgment of the trial court is hereby affirmed.

THOMAS H. NEWTON, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.