STATE ex rel. Michael SANDERS,
Prosecuting Attorney of Jackson
County, Relator,

v.

The Honorable Margaret L.
SAUER, Respondent.

No. SC 86955.

Supreme Court of Missouri,
En Banc.

Jan. 31, 2006.

Raoul C. Stitt, Michael D. Sanders, Office of Jackson County Prosecuting Attorney, Family Support Division, Kansas City, MO, for Relator.

Edmund T. Shine, Office of the Public Defender, Kansas City, MO, for Respondent.

Original Proceeding in Prohibition

STEPHEN N. LIMBAUGH, JR., Judge.

Relator, the prosecuting attorney of Jackson County, seeks a writ of prohibition preventing respondent from ordering a custodial parent and child to submit to genetic blood testing in a criminal nonsupport proceeding. This Court granted a preliminary writ, which is now made absolute. Mo. CONST. art. V, sec. 4.

The facts of this case are not in dispute. In 1990, the Division of Family Services filed a "Petition for Declaration of Paternity" against Montae Perkins under the Uniform Parentage Act (UPA), secs. 210.817–.852, RSMo 1987. In that proceeding, Perkins signed an entry of appearance, waiver of service, and a "Stipulation Regarding Blood Tests," in which he agreed to submit to blood testing to determine paternity. Perkins was notified of scheduled blood tests on four different occasions spanning eight months, but he failed to appear for any of the tests. Nor did he ever file an answer to the petition. On October 21, 1991, the court entered a default judgment declaring Perkins to be the father of the minor child. Perkins made no effort to set aside the default judgment or otherwise appeal.

■ On July 14, 2004, the relator charged Perkins with criminal nonsupport, a class A misdemeanor, alleging failure to provide legally obligated adequate support for his minor child, without good cause, between February 1, 2004, and June 30,

2004. On April 12, 2005, Perkins filed a "Motion for Disclosure of DNA of Custodial Parent and her Child for Good Cause Shown Pursuant to Supreme Court Rule 25.04." Respondent sustained the motion and ordered the state to produce the custodial parent and child for DNA testing. Relator then filed the petition for writ of prohibition that is the subject of this action. Prohibition is the proper remedy "when a trial court makes an order in discovery that is an abuse of discretion." *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927–28 (Mo. banc 1992).

■ The criminal nonsupport statute, section 568.040, RSMo 2000, states in pertinent part:

[A] parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law. . . .

(1) "Child" means any biological or adoptive child, or any child *legitimated by legal process,* or any child whose relationship to the defendant has been determined, by a court of law in a proceeding for dissolution or legal separation, to be that of child to parent. (emphasis added).

In the underlying prosecution, relator alleges that the child in question was Perkins' child because she was "legitimated by legal process." That phrase has no special definition under section 568.040, but it is clear that under the UPA, the 1990 proceedings involving the petition for declaration of paternity and the resulting judgment constituted a "legal process" that "legitimated" the child. To "legitimate" means "to make lawful; to confer legitimacy; *e.g.,* to place a child born before mar-

riage on the legal footing of those born in lawful wedlock." BLACK'S LAW DICTIONARY 901 (6th ed. 1990). This was established by the judicial determination of the "parent and child relationship," a term defined in section 210.817(4) as "the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations...." In other words, establishing the parent and child relationship operates to establish the legal relationship between them and does so to the same extent as if the child was born to or adopted by the parents. That is the very essence of legitimation. Indeed, that conclusion gives full effect to the mandate of section 210.841.1, which provides, "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes."

█ Perkins does not contest that the child was "legitimated by legal process" under the UPA, but he argues instead that in a criminal prosecution for nonsupport the determination that the child was "legitimated by legal process" must be made on proof beyond a reasonable doubt, not proof that is based on a default judgment in a civil case. Apparently, Perkins demands proof beyond a reasonable doubt that Perkins is, in fact, the biological father of the child, and that in order to controvert the state's proof on that point, he should be afforded the DNA testing that he now seeks. This argument, however, is based on a misperception of the elements of the crime.

█ The element in question is paternity. It is not that the defendant is the biological father of the child that matters, but whether the defendant is the father of the child because the child was "legitimated by legal process." As such, the state need only prove beyond a reasonable

doubt that a judgment was entered establishing that the child was "legitimated by legal process;" whether the defendant is truly the biological father of the child is irrelevant. See State ex rel. Dally v. Copeland, 986 S.W.2d 943 (Mo.App.1999) (applying same elements analysis under section 568.040 to civil judgment of paternity incident to a decree of dissolution); State ex rel. State of Missouri v. Campbell, 936 S.W.2d 585 (Mo.App.1996) (applying same analysis).

Furthermore, this case is no different than a number of other situations in which an individual is subject to criminal liability for violation of a civil order. See e.g. 302.321, RSMo (driving while license or driving privilege is canceled, suspended, or revoked is a class A misdemeanor) and 455.085, RSMo (violation of the terms of a civil protective order is a class A misdemeanor). In those cases, as here, the state need only prove the existence of the civil order and its violation beyond a reasonable doubt in order to convict the defendant; not that the underlying facts giving rise to the civil order are true beyond a reasonable doubt. See State v. Schleiermacher, 924 S.W.2d 269, 273 (Mo. banc 1996).

Ultimately, Perkins' current inability to contest paternity is his own fault. He has blatantly ignored the procedures established by the General Assembly to contest paternity early on, and now, years later, he asks the Court to devise a new procedure to suit his convenience. This the Court will not do, especially where, as here, the result would be to de-legitimize a child.

Under these circumstances, this Court holds that it was an abuse of discretion to order DNA testing. The preliminary writ is made absolute.

STITH, PRICE and RUSSELL, JJ., concur.

WOLFF, C.J., dissents in separate opinion filed; WHITE, J., concurs in opinion of WOLFF, C.J.

WHITE, J., dissents in separate opinion filed; TEITELMAN, J., concurs in opinion of WHITE, J.

MICHAEL A. WOLFF, Chief Justice, dissenting.

As much as I would like to hold the criminal defendant in this case to the 1991 judgment against him, I cannot do so without ignoring the law and the meaning of common English words in the criminal nonsupport statute.

The question is simple: does a judgment of paternity mean that a child has been "legitimated by legal process?"

For purposes of making nonsupport a crime, the statute, section 568.040.2(1)[1] defines "child" as a biological or adopted child, or a child "legitimated by legal process," or a child whose relationship to the parent has been established in a proceeding for separation or dissolution of marriage. The state's case against this criminal defendant, Montae Perkins, depends entirely on interpreting the phrase "legitimated by legal process" to include paternity as established by a judgment under the Uniform Parentage Act, sec. 210.817 et seq.

Establishing paternity does not make a child "legitimate."

"Legitimate," by the ordinary dictionary definition, means that a child was born in wedlock.[2] The statutory phrase includes a judicial determination of legitimacy, which also means that the child was born in wedlock or later determined to be have been born to a married couple.

It is true that the law has tended to remove the stigma of illegitimacy by treating illegitimate children the same as children born of a marriage. The treatment of illegitimate children the same as other children, for many purposes, does not establish that the definition of the word "legitimate" has been changed.

For example, under the Uniform Parentage Act, adopted by Missouri and relied upon by the principal opinion, "[t]he parent and child relationship extends equally to every child and every parent, regardless of the marital status of the parents." Sec. 210.818. Likewise, the worker's compensation statute treats children the same for benefits, "whether legitimate or illegitimate." Sec. 287.240(4)(b). Similarly, legitimate and illegitimate children are treated the same in child custody laws. The terms of the child custody law "apply to children born out of wedlock and to children born in wedlock, and the terms 'father and mother', 'parent', 'child', shall apply without reference to whether a child was born in lawful wedlock." Sec. 452.160.

Traditionally, an illegitimate child could not inherit from the father. *State ex rel. Canfield v. Porterfield,* 222 Mo.App. 553, 292 S.W. 85, 86 (1927). From an early time, Missouri has treated an illegitimate child whose parents later married the same as a legitimate child for purposes of inheritance. *Gates v. Seibert,* 157 Mo. 254, 57 S.W. 1065, 1068 (1900); *Simpson v. Blackburn,* 414 S.W.2d 795, 797 (Mo.App. 1967). This process, known as "legitimation by marriage," is codified in section 474.070: "If a man, having by a woman a

---

**1.** All references are to RSMo 2000 unless otherwise indicated.

**2.** As an adjective, "legitimate" means "lawfully begotten: born in wedlock: having full filial rights and obligations by birth." As a

verb, "legitimate" means "to put (a bastard) in the position or state of a legitimate child before the law by legal means (as the subsequent marriage of the parents)." Webster's Third New International Dictionary (1993).

child or children, afterward intermarries with her and recognizes the child or children to be his, they are thereby legitimated."

The probate code also has a process for determining paternity of illegitimate children. An illegitimate child is considered the child of the father, for probate purposes, if either: (1) the parents were married or attempted to marry either before or after the child's birth; or (2) paternity is established "by an adjudication before the death of the father," or after the father's death by clear and convincing evidence. Sec. 474.060. In the probate context, a finding of paternity is sufficient to allow a child to inherit, but does not "legitimate" the child.

The distinction between legitimate and illegitimate children remains in effect as it relates to birth certificates. The state registrar is required to issue a new birth certificate "upon such evidence as required by the department proving that [a] person has been legitimated." Sec. 193.135.1(2). The evidence required is proof of the parents' marriage, either before or after birth. 19 CSR 10–10.120(1). Where this proof is unavailable, a "court-ordered legitimation" may be obtained, requiring a court to find that the parents were married. 19 CSR 10–10.120(2).

A review of these statutes and rules demonstrates that "legitimated by legal process" is not defined. However, "legitimate" generally means that the parents were married before, at the time of, or after the birth of the child. Although some of these statutes purport to grant the same rights to legitimate and illegitimate children, there is still a difference between them, as the terminology indicates.

In recent years, the equal treatment of illegitimate and legitimate children has been required by a series of decisions of the United States Supreme Court prohibiting discrimination against illegitimate children. *See, Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Gloria v. American Guarantee & Liab. Ins. Co.,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Weber v. Aetna Cas. & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Most pertinently, in 1973, the Supreme Court directly addressed the issue of whether a father could avoid liability for support merely because the children were illegitimate. *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), held that where a judicially enforceable right to support was granted to legitimate children, it must also be granted to illegitimate children. This Court reached the same position several years earlier, in *R. v. R.,* 431 S.W.2d 152 (Mo.1968), holding that "illegitimate children [have] a right equal to that of legitimate children to require support by their fathers." *Id.* at 154. None of these cases addresses the meaning of "legitimated by legal process," as that phrase is used in the criminal nonsupport statute.

This is a criminal case. The rights vindicated are those of the state, not the child. The equal protection cases, cited above, do not dictate the result reached in the principal opinion because here there is no discrimination against the child.

Under the criminal nonsupport statute, the father of an illegitimate child is "criminally responsible for the support of the child," as this Court observed in *Cobb v. State Sec. Ins. Co.,* 576 S.W.2d 726, 734 (Mo. banc 1979). That is certainly true in this case. Perkins, the defendant in the trial court, can be held criminally responsible for nonsupport, if the state establishes that he is the biological father of the child.

In this case, however, the state wishes to bypass the task of establishing that

Perkins is the biological father of the child and rely solely upon the 1991 judgment, by default, that Perkins is the father of the child.[3] In doing so, the state relies on equating paternity with the statutory phrase "legitimated by legal process." The 1991 judgment did not legitimate the child. It did establish a support obligation by deeming that Perkins is the father of this child. But when the state seeks a criminal conviction, it must prove the elements of the statute. It cannot rely upon the 1991 judgment for the proposition that the child has been "legitimated by legal process," so the state must prove that the child is the biological offspring of Mr. Perkins.

Because the issue of biological paternity is something the state must prove, the principal opinion errs in foreclosing the trial judge from ordering DNA testing of the child. I therefore dissent.

RONNIE L. WHITE, Judge, dissenting.

I concur in the dissenting opinion of Chief Justice Wolff. I write separately only to emphasize how important this case is because it presents a lethal threat to the constitutional fundamental right to liberty in the procedural context of leap-frogging from civil to criminal prosecutions.

The Court's hyper-technical analysis of what constitutes adjudication of parentage for purposes of prosecuting someone for criminal non-support results, in essence, to the application of collateral estoppel to legal elements of a criminal offense from a determination made in civil dispute where the burden of proof shifts to beyond a reasonable doubt from preponderance of the evidence. I shudder at the logical extension of such a paradigm because it guts the traditional burden placed upon the State to prove the elements of any offense beyond a reasonable doubt. Shall we also eliminate the presumption of innocence?

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."[1] "Our society's belief, reinforced over the centuries, that all are innocent until the state has proved them to be guilty, like the companion principle that guilt must be proved beyond a reasonable doubt, is implicit in the concept of ordered liberty, and is established beyond legislative contravention in the Due Process Clause."[2] "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged."[3] As

---

3. The State does not argue that the doctrine of issue preclusion—collateral estoppel—applies. That doctrine does not apply to an issue that has not been fully litigated. *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979). The prior judgment, which was in essence a default, does not establish biological parentage for preclusion purposes.

1. *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

2. *United States v. Salerno*, 481 U.S. 739, 763, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (Justices Marshall and Brennan dissenting), *citing to, Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937); *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Taylor v. Kentucky*, 436 U.S. 478, 483, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); *Kentucky v. Whorton*, 441 U.S. 786, 790, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (Stewart, J., dissenting).

3. *Osborne v. Ohio*, 495 U.S. 103, 123, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990).

Justice Scalia has so appropriately empha-sized, "[t]he **Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of lib-erty unless the prosecution proves be-yond a reasonable doubt every element of the charged offense."** [4]

While I staunchly support the public policy of protecting the children of this state, this Court should not forsake the Constitution in a rush to inflict a form of retribution that does absolutely nothing to provide any support for this child. The simplistic and practical solution is oft times obscured by attempts to expediently close the prison cell door. So I ask, with the fundamental rights of due process and lib-erty at stake, what is the harm of conduct-ing a DNA test to confirm Mr. Perkin's parentage beyond a reasonable doubt? Where is the harm in holding the State to its burden of proof? I see no abuse of discretion by the trial court. The fact that reasonable minds on this Court have dif-fered proves the legal standard was not breached. I would quash the preliminary writ.

**4.** *Carella v. California*, 491 U.S. 263, 265, 109   S.Ct. 2419, 105 L.Ed.2d 218 (1989).