**STATE of Missouri, Respondent,**

v.

**Lorenzo S. ECFORD, Appellant.**

**No. ED 86475.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 30, 2006.

*OPINION*

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Lorenzo S. Ecford ("Defendant"), appeals from the judgment of the Circuit Court of Marion County, following a jury trial, finding him guilty of criminal nonsupport, section 568.040, RSMo 2000.[1] Defendant waived jury sentencing. The trial court sentenced Defendant to three years of imprisonment but suspended the execution of sentence. Defendant was placed on probation for a period of five years. We affirm.

On May 9, 1997, the trial court entered a default paternity judgment, which declared Defendant to be the father of Stanisha D. Ecford ("Child"). Child's mother is Valarie McCloud ("Mother"). The trial court ordered Defendant to pay $234 per month to Mother in child support for Child. Defendant never appealed from this paternity judgment or sought to modify it.

On November 12, 2003, Defendant was charged by information with criminal nonsupport. On May 17, 2004, Defendant filed a motion for blood tests requesting the court to order Defendant, Child, and Mother to submit to blood tests for the purpose of determining whether Defendant was Child's biological father. The trial court overruled Defendant's motion for blood tests on May 20, 2004. Subsequently, Defendant sought a writ of prohibition from this Court, which was denied on December 2, 2004.

A jury trial took place on April 18, 2005. The jury found Defendant guilty of criminal nonsupport. Defendant waived jury sentencing. On June 6, 2005, the trial court sentenced Defendant to three years of imprisonment but suspended the execu-

Craig A. Johnston, Assistant State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for respondent.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

tion of sentence. Defendant was placed on probation for a period of five years. This appeal by Defendant followed. Defendant does not challenge the sufficiency of the evidence.

In his first point on appeal, Defendant asserts that the trial court erred in overruling his motion for blood tests.

In his first sub-point on appeal, Defendant argues he had a right to show that Child was not his biological child.

We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion. *State v. Nelson*, 178 S.W.3d 638, 642 (Mo.App. E.D.2005).

Pursuant to section 568.040.1, a parent commits the crime of criminal nonsupport when he "knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law...." Section 568.040.1. "Child" is defined as "any biological or adoptive child, or *any child legitimated by legal process*, or any child whose relationship to the defendant has been determined, by a court of law in a proceeding for dissolution or legal separation, to be that of child to parent." Section 568.040.2(1) (emphasis added).

The Missouri Supreme Court has recently held that a child is "legitimated by legal process" within the meaning of section 568.040.2(1) when the State proves beyond a reasonable doubt that there was a default paternity judgment entered against a parent. *State ex rel. Sanders v. Sauer*, 183 S.W.3d 238, 240 (Mo.banc 2006). In *Sanders*, the Missouri Supreme Court held it was an abuse of discretion for a court to order DNA testing for a parent in a criminal nonsupport case when there has been a default paternity judgment entered against him. *Id.*

In this case, Defendant concedes there was a default paternity judgment entered against Defendant, declaring him to be the father of Child. As a result, the State met its burden of proving beyond a reasonable doubt that Child was legitimated by legal process. Whether Defendant was in fact the biological parent of Child was irrelevant in this criminal nonsupport case. *See id.* Therefore, the trial court did not abuse its discretion in overruling Defendant's motion for blood tests. Sub-point denied.

In his second sub-point on appeal, Defendant maintains that the default paternity judgment is subject to collateral attack because it was void in that, due to improper service, it was entered without personal jurisdiction over Defendant.

Because the issue of whether a default judgment is void for lack of personal jurisdiction is a question of law, we review it de novo. *Bueneman v. Zykan*, 52 S.W.3d 49, 58 (Mo.App. E.D.2001).

A judgment that has been entered by a court without personal jurisdiction over the defendant is void and may be attacked collaterally. *Worley v. Worley*, 19 S.W.3d 127, 130 (Mo.banc 2000). A trial court's judgment is entered without personal jurisdiction and is void when service of process is improper. *Maul v. Maul*, 103 S.W.3d 819, 821 (Mo.App. E.D. 2003). Service at the dwelling house or usual place of abode of the defendant with a person of the defendant's family over the age of fifteen years is a proper method of service. *See* Rule 54.13(b)(1).

A collateral attack on a judgment is an effort to impeach the judgment in a proceeding not initiated for the express purpose of voiding the judgment. *Miller v. Jonesburg State Bank*, 174 S.W.3d 79, 80 (Mo.App. E.D.2005). A collateral attack only has merit when the record itself

affirmatively reveals that the judgment was void for lack of jurisdiction. *Id.* Extrinsic evidence is not admissible to impeach a judgment upon a collateral attack. *See id.* The sheriff's return on service is considered prima facie evidence of the facts recited therein. Rule 54.22(a).

In this case, because Defendant's argument that the court did not have personal jurisdiction over him in the default paternity judgment is raised in this criminal nonsupport action, Defendant is collaterally attacking the default paternity judgment. Thus, our review is limited only to the record of the paternity action.

The record of the paternity action reveals that Deputy Sheriff Roger Wasson served the summons by "leaving a copy of the summons and a copy of the petition at the dwelling house or usual abode of the defendant with Gloria Murphy, a person of the defendant's family over the age of 15 years." There is not any other evidence in the record of the paternity action regarding service. Thus, the record reveals that Defendant was properly served. Therefore, the default paternity judgment is not void for lack of personal jurisdiction. Subpoint denied.

■ In his second point on appeal, Defendant argues the trial court erred in preventing him from presenting evidence that Mother told Pamela Bridges that Child was not Defendant's biological child.

■ We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion. *Nelson,* 178 S.W.3d at 642. "A trial court does not abuse its discretion when it excludes irrelevant evidence." *Mehrer v. Diagnostic Imaging Center, P.C.,* 157 S.W.3d 315, 320 (Mo.App. W.D.2005).

As discussed in the first point on appeal, evidence that Child is not Defendant's biological child is irrelevant to the criminal nonsupport proceeding. As such, the trial court did not abuse its discretion in excluding this evidence. Point denied.

In his third point on appeal, Defendant maintains the trial court plainly erred in not *sua sponte* declaring a mistrial when the State made comments in closing argument that the case was not about child support, but whether Child was Defendant's child.

■ Defendant admits that because defense counsel did not object to the State's argument, we review for plain error. *See State v. Cole,* 71 S.W.3d 163, 170 (Mo.banc 2002). Under plain error review, we will only reverse the decision of the trial court if there was a plain error affecting a substantial right that results in manifest injustice or a miscarriage of justice. *State v. Miller,* 162 S.W.3d 7, 16 (Mo.App. E.D.2005).

Defendant contends that it was improper for the State to make this argument to the jury when Defendant was not allowed to present evidence that he was not Child's biological Father.

The State never asserted during closing argument that this case was about whether Child was the biological child of Defendant. Regardless, no manifest injustice could have resulted from such an argument because, as discussed above, whether Defendant was Child's biological father was irrelevant. Point denied.

In his fourth point on appeal, Defendant asserts the trial court erred in overruling his motion for judgment of acquittal because he was not legally obligated to provide for Child in that the default paternity judgment was entered without personal jurisdiction over him.

As discussed earlier, the default paternity judgment is not void for lack of personal jurisdiction. Thus, the trial court did not

err in overruling Defendant's motion for judgment of acquittal. Point denied.

Based upon the foregoing, we affirm the judgment of the trial court.

GEORGE W. DRAPER III, concurs.

KENNETH M. ROMINES, concurs in separate opinion.

Kenneth M. Romines, Judge, concurring.

I concur because I must. The Court correctly states the current controlling authority.

I find the analysis of Judge White, and Judge Wolff on the issue at the heart of this matter compelling and convincing.[1] Judge White sets out the clear principles at tension, and Judge Wolff applies common sense meaning to the words at issue.

I disagree with the controlling cases for a fundamental reason: Article I, Section 11 of the Constitution of Missouri (1945) in simple and clear words, does not allow a criminal conviction for the defendant's inaction.

Art I Section 11:

That no person shall be imprisoned for debt, except

for nonpayment of fines and penalties imposed by law.

Parse, ignore, and creatively define as we might, a duty to pay child support – as a duty to pay a mortgage – is a debt enforced by Court order. We do not have debtors' prisons for failure to pay money obligations arising from duties. History should not be so easily forgotten. Execution by Writ of Attachment led to impris-

onment for debt, sale of the debtor into slavery, or the cutting of the debtor into pieces proportionate to each creditor's claim.[2]

Successive Constitutions of this State, beginning in 1820, have provided that debt is not a crime:

Const. 1820, Art 13 Section17 states: That no ex-post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed; nor can the

person of a debtor be imprisoned for debt after he shall have surrendered his property

for the benefit of his creditors in such manner as may be prescribed by law.

Const. 1865, Art I Section XXIX states: That Imprisonment for debt cannot exist in this

state, except for fines or penalties imposed for violation of law:.

Const. 1875 Art II Section 16 states: That imprisonment for debt shall not be allowed, except for the non-payment of fines

and penalties imposed for violation of law.

Const. 1889 Art Section 16 states: That imprisonment for debt shall not be allowed except for the non-payment of fines

and penalties imposed for violation of law.

The most principled discussion of this issue is the dissent of Judge Bardgett in *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo.banc 1976).

1. *State ex rel Michael Sanders v. Hon. Margaret L. Sauer,* 183 S.W.3d 238 (Mo.banc 2006).

2. William Shakespeare, Merchant of Venice, act IV sc. 1.: Bruce Mann, Republic of Debtors, Harvard University Press, 2002; and see *State v. Allison* ; Imprisonment for Debt in South Dakota, 46 SDL Rev 334 (2001).

In sum, *contempt* is available under the limited circumstances set out by Judge Bardgett, Id.; debtors are not criminals given Art I Section 11.[3]

**3.** Defendant did not raise Art I Section 11 as a defense; had he a dissent would have been compelled.