**STATE of Missouri, Respondent,**

v.

**David SALAZAR, Appellant.**

No. SC 88438.

Supreme Court of Missouri, En Banc.

Oct. 30, 2007.

RICHARD B. TEITELMAN, Judge.

David Salazar appeals his conviction for criminal nonsupport under section 568.040.[1] The conviction was premised upon a finding that Salazar failed to provide adequate support "for his child." *Section 568.040.1* The term "child" includes "any child legitimated by legal process." *Section 568.040.2(1).* The circuit court held that a default administrative order issued by the division of child support enforcement (DCSE) and docketed with the circuit court constituted legitimization by legal process. The default administrative order does not constitute legitimatization by legal process. The judgment is reversed, and the case is remanded.

### *FACTS*

Salazar married Shannon McClure on June 17, 2000. The couple separated in September 2000. On November 29, 2001, McClure gave birth to A.S. McClure requested that the birth certificate not list a father. Despite McClure's request, the hospital listed Salazar as the father.

The DSCE served Salazar with a "Notice and Finding of Financial Responsibility" alleging that Salazar had a duty to support A.S. Salazar and McClure contacted the DSCE and denied that Salazar was the father. Salazar did not appear at the hearing to determine his financial responsibility for A.S. The DSCE entered a default order declaring Salazar to be A.S.'s father and requiring him to pay child support to McClure. The default order was docketed with the circuit court and became effective but no hearing was held or notice given to Salazar by the circuit court.

Salazar was charged with nonsupport after McClure filed for public assistance. Salazar and McClure were the only witnesses to testify at the criminal trial.

Merle K. Turner, Office of Public Defender, St. Joseph, MO, for Appellant.

Laura B. Donaldson, Office of Prosecuting Atty., St. Joseph, MO, for Respondent.

---

1. All statutory offenses are to RSMo 2000.

Both testified that although they were married when A.S. was born, they had no sexual relations in the preceding fourteen months. McClure maintained that Salazar could not be the father.

The circuit court found Salazar guilty of criminal nonsupport under section 568.040.[2] The court did not find that Salazar was the biological parent of A.S. Instead, the court held that A.S. was Salazar's "child" because the DSCE order constituted legitimization by legal process. The court sentenced Salazar to twenty-eight days in jail. Salazar appeals.

### ANALYSIS

The dispositive issue in this case is whether the default administrative order issued by the DCSE constitutes a "legal process" sufficient to support a conviction for criminal nonsupport under section 568.040. The phrase "legal process" is not defined in chapter 568. The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. *State v. Grubb*, 120 S.W.3d 737, 739 (Mo. banc 2003). However, when interpreting a criminal statute such as section 568.040, the rule of lenity requires the statute is to be strictly construed against the state. *State v. Hobokin*, 768 S.W.2d 76, 77 (Mo. banc 1989). Because a defendant's liberty is at stake, criminal statutes may not be extended by judicial interpretation so as to embrace persons and acts not specifically and unambiguously brought within their terms. *State v. Lloyd*, 320 Mo. 236, 7 S.W.2d 344, 346 (Mo.1928).

The DSCE order finding that Salazar was financially responsible for A.S. is based on section 210.822.1, which provides that a man is presumed to be the father of a child if the child is born during the man's marriage to the child's mother. Section 454.485.1 authorized the DSCE to issue the order because Salazar was "presumed to be the child's father pursuant to section 210.822. . . ." The DSCE then docketed the default order with the circuit court pursuant to section 454.490, which provides that:

> Upon docketing, the order shall have all the force, effect and attributes of a docketed order or decree of the circuit court, including, but not limited to lien effect and enforceability by supplementary proceedings, contempt of court, execution and garnishment.

The State asserts that the foregoing statutes establish a "legal process" sufficient to sustain Salazar's conviction under section 568.040.

There is no dispute that the DSCE default order is enforceable by the circuit court in supplementary civil proceedings once it was docketed pursuant to section 454.490. However, the statute does not expressly provide that the docketed order can serve as a predicate for a criminal offense. That the order is subject to enforcement by the court does not definitively establish that the docketed default order constitutes "legal process" for purposes of sustaining a criminal conviction under section 568.040.

In *State ex rel. Sanders v. Sauer*, 183 S.W.3d 238 (Mo. banc 2006), this court addressed the meaning of the phrase "legitimated by legal process." The issue in *Sauer* was whether a defendant charged with criminal nonsupport was entitled to DNA testing to disprove biological paternity. The defendant was subject to a default judgment of paternity in a case filed in the circuit court by the division of family services seeking a declaration of paternity pursuant to the uniform parentage act, sections 210.817, et seq. *Id.* at 239. The

---

**2.** The offense is a class A misdemeanor.

father signed an entry of appearance, waived service, and filed a stipulation to take blood tests to determine paternity, but then failed to show up for four scheduled blood tests over an eight month period. As a result, a default judgment was entered against him. He chose not to appeal. *Id.*

Section 210.841 of the UPA provides that a judgment of paternity under the UPA is conclusive as to the existence of the parent-child relationship for all purposes. Relying on this statutory provision, and the fact that the father was aware of the court proceedings but affirmatively chose not to take advantage of the opportunities to prove paternity therein provided, the *Sauer* court held that the child in that case had been "legitimated by legal process" within the meaning of Section 568.040.1(2). *Id.* at 240. "As such, the state need only prove beyond a reasonable doubt that a judgment was entered establishing that the child was 'legitimated by legal process;' whether the defendant truly is the biological father of the child is irrelevant." *Id.*

■ The *Sauer* case establishes that the State's burden of proof in a criminal non-support case is to prove "beyond a reasonable doubt that a *judgment* was entered establishing that the child was 'legitimated by legal process.'" Salazar's conviction is not based upon a judgment of paternity entered by the circuit court, but is instead based upon docketed, default administrative order. Although section 454.490 gives a docketed administrative order the "force, effect and attributes" of a circuit court order, the statute does not provide that, upon docketing, the order becomes a judgment of the circuit court. *State ex rel. Hilburn v. Staeden,* 91 S.W.3d 607, 611 (Mo. banc 2002). The docketed order can be enforced by the circuit court, but it cannot become an actual judgment of the

circuit court absent judicial review. *Id.* There was no judicial review of the order finding Salazar financially responsible for A.S. Consequently, the docketed order is not a final judgment of the circuit court. Holding otherwise would impermissibly substitute an executive branch agency determination for the independent power of the circuit court to render final judgments. *Id.*

The State bore the burden of establishing that Salazar owes a duty of support to his "child," as that term is used in section 568.040. In contrast to *Sauer*, there is no final judgment and, thus, no "legal process" that judicially determined Salazar's parentage. In the absence of a circuit court judgment, Salazar is not prevented from collaterally attacking the administrative order used to establish his obligation of support that, in turn, serves as the basis for this criminal prosecution. Because the State failed to prove beyond a reasonable doubt that A.S. been legitimated by "legal process," the judgment is reversed, and the case is remanded.

LAURA DENVIR STITH, C.J., RUSSELL and WOLFF, JJ., concur;

MOONEY, Sp.J., concurs in result in separate opinion filed;

LIMBAUGH, J., dissents in separate opinion filed;

PRICE. J., concurs in opinion of LIMBAUGH, J.

BRECKENRIDGE, J., not participating.

LAWRENCE E. MOONEY, Sp.J., concurring in result.

Because the trial judge made clear that David Salazar's conviction rested only on the default administrative order and that he did not conclude that David Salazar was

the child's biological father, I concur in the reversal of his conviction for failing to support this child.

The Missouri legislature has rightly enacted a law making it a crime for a parent to fail to provide adequate support for his or her child.[1] The legislature has provided that for purposes of the criminal nonsupport statute, a "child" means:

> ... any biological or adoptive child, or any child legitimated by legal process, or any child whose relationship to the defendant has been determined, by a court of law in a proceeding for dissolution or legal separation, to be that of child to parent.

Section 568.040.2(1), RSMo 2000. Courts have held, I believe erroneously, that once the prosecution demonstrates a defendant's paternity in any one of these four forms, the actual paternity of the father is no longer in dispute. *State ex rel. Sanders v. Sauer,* 183 S.W.3d 238, 240 (Mo. banc 2006); see also, *State ex rel. Dally v. Copeland,* 986 S.W.2d 943 (Mo.App.1999); *State ex rel. State v. Campbell,* 936 S.W.2d 585 (Mo.App.1996). Thus a court might hold that a prior legitimation or adjudication conclusively establishes paternity for purposes of a criminal nonsupport prosecution. For three reasons, I believe this interpretation is in error.

First, this reading of the statute renders it unconstitutional. In effect, a defendant is collaterally estopped from presenting his defense of a lack of paternity. And the law holds that the doctrine of collateral estoppel does not apply if the burden of proof is greater in a later proceeding. Restatement (Second) of Judgments section 28 at 273 (1982); see also, *State v. Yelli,*

247 Neb. 785, 530 N.W.2d 250, 254–5 (1995) (holding that previous judgments in civil paternity actions were not binding under doctrine of collateral estoppel in a later criminal nonsupport prosecution). Making a "judgment in a civil action conclusive of an element in a criminal action denies a defendant due process because his guilt is not proved beyond a reasonable doubt, and because he is not allowed to present relevant evidence negating an element of the crime." *State v. Hoy,* 742 S.W.2d 206, 208 (Mo.App.1987) (other holdings noted to be superseded by statute). Because this Court is to interpret statutes in a way that renders them constitutional, the Sauer court's interpretation is erroneous.

Second, this interpretation of the statute produces absurd results. The Sauer court reads the "child" provision as establishing four distinct "types" of "childhood." Consider the ramifications of this for Mr. Salazar. David Salazar has not yet divorced his wife because of his financial straits. If he does so, a court of law might yet decree that he is not the biological father of the child because the dissolution court is not precluded from relitigating the issue of paternity by virtue of the administrative order. *Smith v. Smith,* 985 S.W.2d 829, 835 (Mo.App.1998). If that were to occur and David Salazar would persist in failing to support the child, a prosecutor could charge him with criminal nonsupport, advancing any one of three theories. In the first instance, the prosecutor could claim that the child was David Salazar's biological child, in which case paternity would likely be litigated by way of testimony and blood tests. Or the prosecutor might

---

1. The criminal nonsupport statute, section 568.040, provides in pertinent part, as follows:

    1. ... a parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law.

charge David Salazar on the theory that the child was his due to legitimation by legal process, in which circumstance the State could conclusively prove paternity by the prior legitimation and David Salazar would be precluded from offering evidence of his lack of paternity or the dissolution court's judgment finding him not be the father. Note here that a defendant can be precluded by a prior legitimation and a contrary judgment of a court of law is not even admissible. Finally, the prosecutor might assert that the child was David Salazar's offspring by operation of the dissolution judgment, in which case David Salazar would be entitled to a directed verdict of acquittal based on the prior dissolution judgment finding him not to be the father. In sum, the Sauer court's interpretation allows for three wildly disparate outcomes on the contested issue of paternity-a trial on the merits, conclusive proof of guilt, or conclusive proof of innocence-as to the same parent and the same child depending on the "theory" of childhood the prosecutor advanced. But the existence of a parent-child relationship should not depend on the theory advanced by the prosecution. Rather it should be determined whether one is actually the parent of the child.

Third and most critically, this is not what the legislature intended. I simply do not believe it was the legislature's intent to punish a defendant who was not the actual parent of the child. What then does the "child" provision mean? The Court obviously must give effect to the legislature's intent, but it must construe the statute in such a way as to render it constitutional and avoid absurd results. I propose an interpretation that, at this juncture in Missouri law, may seem novel: the legislature intended to prosecute persons for failing to support their children when and only when they are actually the parents of the child, whether biological or adoptive. I do not believe that the legisla-

ture intended to establish two new species of childhood—childhood by legitimation and childhood by adjudication. In its opening clause, the statute identifies two alternative ultimate facts, which may prove the parent-child relationship—biological childhood or adoptive childhood. The statute then merely denominates two new avenues of proof of paternity, which are normally unavailable in criminal cases. But these new avenues of proof are not conclusive. They do not preclude a defendant from presenting his defense that he is not the actual father. Instead these legitimations or adjudications merely constitute prima facie proof of paternity, just like the presumption that exists for a child born in wedlock. Although this reading of the statute facilitates proof of paternity for the prosecution, it does not deny a defendant an opportunity to present his defense. Further, it avoids the absurd results that flow from the Sauer court's interpretation. Finally, I believe it carries out the legislature's intent: to provide children with the care and support they are due from their actual parents.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent.

I would hold that the minor child was "legitimated by legal process" under section 568.040 by the entry of the administrative order establishing paternity under section 454.490. "Legal process," as the majority correctly notes, is not defined. But the statute does not purport to require a formal judgment in a suit filed in the circuit court as the exclusive means to establish that a "legal process" has been utilized, and contrary to the majority, *State ex rel. Sanders v. Sauer*, 183 S.W.3d 238 (Mo. banc 2006), did not so hold. "Legal process" is necessarily a broader term, and a formal judgment is merely a subset encompassed by that term. In my view,

**650**

an administrative order under section 454.490, which has "all the force, effect, and attributes of a docketed order or decree of the circuit court ...," is no less a legal process than a formal judgment. Moreover, the administrative order is all the more a "legal process" because ample due process is afforded to defendants through notice of the proceedings, a hearing before the administrative agency, an entitlement to de novo review before the circuit court, and an appeal thereafter. *Dye v. Div. of Child Support Enforcement,* 811 S.W.2d 355, 359 (Mo. banc 1991).

In essence, this case is no different than *Sauer:* A default was taken against both putative fathers, but neither took advantage of the legal process available to them to refute the determination of paternity. For this reason, I would affirm the judgment of the trial court.