**STATE of Missouri, Plaintiff–Respondent,**

v.

**Courtney D. WILKINS, Defendant–Appellant.**

**No. 27013.**

Missouri Court of Appeals,
Southern District,
Division One.

May 29, 2007.

Motion for Rehearing or Transfer Denied
June 19, 2007.

Application for Transfer Denied
Aug. 21, 2007.

Rosalynn Koch, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger Johnson, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Courtney D. Wilkins ("Appellant") was convicted of rape, a violation of § 566.030; kidnapping, a violation of § 565.110; and the Class B felony of first-degree assault, a violation of § 565.050.[1] He was sentenced to consecutive terms of life imprisonment for rape, twenty years for kidnapping and thirty years for assault. Appellant represented

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

himself in a trial that took place from February 22, 2005, through March 1, 2005. Appellant is represented by counsel in this appeal,[2] in which he raises two errors: first, that the trial court abused its discretion in sustaining the State's objection to Appellant's offer of proof and excluding evidence concerning the victim; and, second, that the trial court erred in refusing an instruction purportedly submitting a lesser offense of the third-degree assault conviction. We find no error and affirm.

Appellant does not contest the sufficiency of the evidence; therefore, viewed in the light most favorable to the verdict, the following evidence was adduced at trial. On Thursday, November 14, 2002, Appellant and T.T. ("Victim") went to Remington's, a club in Springfield, MO, between 9:00 and 9:30 p.m. Appellant and Victim had known each other since February 2002 and their relationship had become sexual in late October or early November 2002.

Victim had three or four tequila sunrises and one or two shots of tequila and became "somewhat intoxicated" while at Remington's. Approximately two hours after arriving at the bar, Victim got into a verbal dispute with a female acquaintance when someone called out "bitch" when Victim walked by her table. Victim argued with the woman for about ten minutes before Appellant and club security intervened. A security officer then asked Victim to leave the club.

Appellant and Victim left the club in Victim's car with Appellant driving. While in the car, Appellant and Victim argued about who had started the disagreement at the club. Victim maintained that she did not start the fight and Appellant insisted that she did. Victim told Appellant to take her home, but Appellant drove her to his house instead.

Victim began to get out of the car after arriving at Appellant's house but before she could, Appellant grabbed her by her hair, pulled her out of the car, and choked her until she fell. As Appellant began to drag Victim toward the house, Victim grabbed the rear spoiler of her car and attempted to pull herself up. This proved unsuccessful as the spoiler broke off the car. Appellant continued to pull Victim's hair and drag her toward the house.

Appellant shut the door quickly after he pulled Victim into the house. Victim made an attempt to open the door and escape but Appellant punched her in the jaw. He hit her two or three more times before Victim fell to the ground. Appellant "got on top of [her]" and continued to choke and hit her. Victim saw spots and may have lost consciousness when she was choked. Because she was beaten and choked harder whenever she fought or tried to get away, Victim decided to stop fighting back.

Appellant then drug Victim up the stairs to the second floor bedroom and pushed her onto the edge of the bed. Victim told Appellant that she was sorry for the argu-

---

**2.** During this appeal, Appellant sought and was granted leave to file a pro se brief. A review of each point reveals none are meritorious. Appellant's major complaint in his pro se brief, and throughout the preliminary stages of the trial, stems from his belief that he was constitutionally entitled to "hybrid counsel." The courts of this State have consistently stated that a defendant has no right to hybrid counsel and we continue to adhere to that view today. *See State v. Hampton*, 959 S.W.2d 444, 447 (Mo. banc 1997); *State v. Williams*, 34 S.W.3d 440, 442 (Mo.App. S.D. 2001); *State v. Hurt*, 931 S.W.2d 213, 214 (Mo.App. W.D.1996); *see also McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (the federal constitution does not require the trial judge to permit hybrid counsel).

ment at the club and asked him to "let [her] go" so she could go home. Appellant did not answer and began to undress himself. He grabbed Victim's head and told her to perform oral sex on him. Victim told him that she could not because her jaw was hurt.

Appellant pulled Victim's underwear off from underneath her skirt. He then raped Victim; he forced Victim on top of him and, when she resisted, he choked her. Whenever Appellant choked Victim, he said, "are you ready to die?" Victim replied no, and kept saying, "I love you, [son's name]," because she thought if Appellant heard her mention her son he would quit. Appellant's choking caused Victim to have trouble breathing and Appellant told her he liked the sound of her struggling to catch her breath and choked her harder. He also told Victim that if she told anyone, he was going to kill her and her son. Victim went in and out of consciousness while Appellant raped her and she eventually passed out.[3]

Victim was lying at the foot of the bed when she revived and Appellant was sleeping. It was 5:30 in the morning when Appellant began to wake up. Victim asked him if she could leave. Appellant eventually found Victim's keys on the desk in the bedroom and gave them to her; he followed her down the stairs and acted as if nothing had happened. Appellant gave Victim a hug when she reached the door and told her he was sorry.

Victim left Appellant's house and drove home to her son. She had her ex-husband take their son from her home and called the police. She was taken to the hospital where her injuries included: bruises on her forehead, a swollen jaw, a tooth that fell out, broken fingernails, bruises on her arms, broken blood vessels in her eyes (either from direct trauma or asphyxiation), handprint bruises on her wrists, and an earring had been ripped from her ear.

Victim was missing a necklace, a silver hoop earring, underwear, and an identification card. All of the items were found at Appellant's home. Appellant was extensively interviewed by the police but denied that any sexual activity or violence had occurred. He had no possible motive at the time of the interview for Victim's allegations, other than Victim was a jealous person. At the time of trial, Appellant claimed that the motivation for Victim's claims was a failed business relationship, which is the subject of his first point relied on.

■ In his first point, Appellant claims the trial court erred in excluding evidence that Victim worked as an exotic dancer and prostitute. Specifically, Appellant complains that his offer of proof on that matter was rejected by the trial court. Because Appellant represented himself at trial, the transcript is less than clear as to what the purported offer of proof entailed. What is clear is that the State brought a Motion in Limine seeking, in part, to exclude evidence of Victim's character, other than her reputation for truth and veracity, because such evidence was immaterial. Specifically, it sought to exclude evidence that Victim "participated in a photo shoot that involved erotic material ... [and] was involved in prostitution[.]" It argued that these topics were "irrelevant, untrue, pure character assaults or prior bad acts with no association to the charged conduct." After holding a hearing, the trial court sustained this part of the Motion in Limine.

**3.** At trial, Victim testified that these events occurred while acknowledging that she could not remember in what order they occurred due to being choked and going in and out of consciousness.

During the trial, Appellant's defense was that Victim was falsely accusing him of assault and rape because he refused to return the title to her car. He claimed he received the title as payment for the work he did as a driver in her exotic dancing and prostitution business and for rent. The trial court allowed Appellant to testify that he had a general business relationship with Victim as her driver but he could not discuss what Victim's business was. During Appellant's extensive cross-examination of Victim, he asked her if she operated her own business. The State objected and the trial court inquired where Appellant was going with that line of questioning. Appellant responded by saying that the only other question concerning Victim's business that he was going to ask was whether she had hired him to work for her business. The State withdrew any objection to those questions.

A discussion ensued between the court, Appellant, and the State regarding the relevance of testimony concerning Victim's employment as a prostitute. In what the trial court construed as an offer of proof from Appellant, Appellant alleged that Victim worked as a prostitute and ran an escort service in which she sent females to hotel rooms to give private shows. He claims that following Victim's arrest for prostitution, she asked Appellant to work for her as a driver. His job was to drive Victim and other girls to hotel rooms and act as their security and he was to be paid a flat fee.

After working for Victim for around a month, Appellant was having financial problems and needed to find another roommate. Victim was also having problems with her living arrangement so she decided to move in with Appellant. Appellant claims Victim signed over the car title to her Ford Escort before she moved in as partial payment for his work as her driver and as a rent payment. Appellant planned to use this car title to obtain a loan. The car title was also, according to Appellant, the source of an argument after he and Victim returned to the house after she was kicked out of the club. He says he told Victim that, while he would continue to drive for her, he did not want her moving in and did not want to be in a relationship with her. Appellant said the next morning when Victim was leaving, she asked for her car title; he replied that it was his car title, kicked her out of his house, and three hours later he was in jail.

The State informed the trial court it had done an extensive investigation into Appellant's allegations and found no evidence supporting them and further argued that the evidence that Victim was a prostitute was irrelevant. The court ruled that Appellant could "not ask a question or make reference to any sort of escort business, call girl operation, prostitution, [or] anything of that nature." The trial court did allow Appellant to discuss "whether or not there was a business relationship, whether [Victim] asked [Appellant] to work for her, [and] whether [he] did work for her." Appellant now claims this ruling was in error because he had a right to explain the entire situation so that the jury could understand the true nature of his relationship with Victim and the circumstances surrounding the incident. The State challenges Appellant's point because he only challenged the trial court's ruling on the Motion in Limine and did not attempt to present the excluded evidence at trial. Assuming *arguendo* that Appellant's offer was a sufficient attempt to present the evidence, we find that the trial court did not abuse its discretion in excluding evidence of Victim's involvement in any sort of escort business, call girl operation or prostitution.

Both parties in their briefs imply that the trial court excluded evidence of Victim's work in exotic dancing and prostitution under Missouri's rape shield statute, § 491.015; however, nothing in the record supports this. The Motion in Limine, which the State referenced when it made its objections during the trial, seeks to exclude the evidence because it was "irrelevant, untrue, pure character assaults or prior bad acts with no association to the charged conduct." The trial court referenced this motion when it told Appellant that he could not mention Victim's work in exotic dancing and prostitution. It never stated that this exclusion was pursuant to § 491.015.[4] Accordingly, we find that the trial court excluded this evidence for the same reason the State sought to have it excluded in its Motion in Limine, because it was irrelevant to the proceedings.

■■■■ "A trial court has broad discretion to admit or exclude evidence at trial." *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). We will reverse a trial court's ruling only if the trial court clearly abused its discretion. *Id.* Its discretion is abused only when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.* " 'A trial court does not abuse its discretion when it excludes irrelevant evidence.' " *State v. Ecford*, 198 S.W.3d 156, 159 (Mo.App. E.D.2006) (quoting *Mehrer v. Diagnostic Imaging Center, P.C.*, 157 S.W.3d 315, 320 (Mo.App. W.D. 2005)). Evidence is relevant when it tends to confirm or refute a fact in issue, establishes motive or intent, or corroborates other relevant evidence which bears on the principal issue. *State v. Freeman*, 212

S.W.3d 173, 176 (Mo.App. S.D.2007); *State v. Skaggs*, 74 S.W.3d 282, 285 (Mo.App. E.D.2002). The probative value of evidence must also outweigh its prejudicial effect. *Skaggs*, 74 S.W.3d at 285.

Under this standard, the allegation that Victim worked as an exotic dancer and prostitute is irrelevant. The only relevancy Victim's alleged profession has on this case is Appellant's claim that he worked for Victim and she gave him her car title partially as payment for his services as her driver. Appellant claims knowing that Victim worked as an exotic dancer and prostitute was necessary for the jury to have a complete and coherent picture of the events leading up to the alleged crime and without such knowledge they would never understand or believe that Victim hired Appellant as her driver. We disagree.

Victim testified that she never employed Appellant and never signed her car title over to him. Appellant, during his trial testimony, claimed he was working for Victim and she signed over her car title for both as payment for his services and for rent. The only other mention of this relationship came in via the testimony of Dana Harris, a witness for Appellant. In answering the question of whether Appellant worked for Victim, Mr. Harris stated that Victim had an operation and Appellant was driving for her. We fail to see how testimony explaining that Victim's business, or "operation," was exotic dancing and prostitution makes the fact that Appellant was her driver more believable. More specifically, we fail to see how her supposed occupation as an exotic dancer and prostitute makes it more likely that a jury would

---

4. On the same day that the trial court conducted a hearing on the Motion in Limine, it also conducted a hearing on Appellant's "Motion for Introduction of Evidence of Sexual Conduct and Offer of Proof Pursuant to

RSMo. 491.015." The trial court did not mention its ruling on this motion when excluding evidence of Victim's work in exotic dancing and prostitution.

believe that she signed over her car title to Appellant, and Appellant's refusal to return the title prompted Victim to fabricate these allegations of forcible rape, kidnapping, and assault. Furthermore, Victim would have to have the injuries inflicted upon her to substantiate her fabricated story. Evidence that Victim worked as an exotic dancer and prostitute was irrelevant and the trial court did not abuse its discretion in excluding it.[5] Point one is denied.

In his second point, Appellant claims the trial court erred in refusing his request to instruct the jury on the lesser included offense of assault in the third degree. Assault in the third degree is a lesser-included offense of assault in the first degree. *See* § 556.046.1(2); *State v. Hibler*, 5 S.W.3d 147, 151 (Mo. banc 1999).

Rule 84.04(e)[6] states in part, "If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." This rule explicitly applies to criminal appeals pursuant to Rule 30.06(c). Appellant did not "set forth in full in the argument portion of the brief" the lesser-included jury instruction for assault in the third degree that he proposed to the trial court. Failure to comply with this rule preserves nothing for appellate review. *State v. Thompson*, 147 S.W.3d 150, 160 (Mo.App. S.D.2004). Even though not preserved for review, discretion rests with this Court to review the

claim for "plain error" under Rule 30.20. *State v. Boydston*, 198 S.W.3d 671, 675 (Mo.App. S.D.2006). We decline to exercise plain error review because a cursory glance at what Appellant submitted shows that it was not a proper instruction and therefore the trial court did not error in refusing it.

Appellant submitted to the trial court nothing more than a photocopy of the skeleton form for MAI–CR 3d 319.18.[7] Skeleton forms are not instructions but rather are to be used in formatting instructions. Within the skeleton forms the "parentheses enclose words or phrases that will be either omitted or included, depending upon the facts of the case being submitted." MAI–CR 3d iii. They also include brackets which "contain directions concerning the use or completion of the instructions." *Id.* Appellant did not use the skeleton form to fashion an instruction in compliance with MAI–CR 3d 319.18, but rather attempted to submit the skeleton form as an instruction. The skeleton form is not a proper instruction. Point two is denied.

The judgment of the trial court is affirmed.

PARRISH, J., and SCOTT, J., concur.

---

5. We do not address the prejudicial effect of the evidence because we find it logically irrelevant, but it is interesting to note that Appellant did not mention a dispute over a car title on the morning of the incident. It was his position that absolutely nothing happened between Victim and himself at his home even though he admits that she left his home at the time that she said and which was shortly before she called the police. We doubt the jury would have reached a different result had they received evidence that Victim was engaged in prostitution. It was not more proba-

ble than not that an exotic dancer would endure the massive injuries to her body in order to frame Appellant on criminal charges in an effort to obtain her car title. The prejudicial effect far outweighs what little probative value there is to the evidence.

6. All rule references are to Missouri Court Rules (2006), unless otherwise specified.

7. An unfilled out form is called a "skeleton form" under Rule 28.02(d).